# EXHIBIT A

Electronically Filed
7/21/2017 5:30:51 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Jeri Heaton, Deputy Clerk

Wᵐ Breck Seiniger, Jr. (ISB#2387)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com

Barton, Peter G

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| KATRINA M. SHRADER<br><br>*Plaintiff,*<br><br>vs.<br><br>ST. LUKE'S HEALTH SYSTEMS; KRISTIE HANSON; JUDY GLASS; DESIREE SCHAFER; MAUREEN ASKEW; PAMELA LANE; LINDSEY TAFFIN; NICOLE DEAHL; CHRIS NEWTON; HANNAH NOGLE; *and* JOHN and JANE DOES I THROUGH XX, *whose true names are unknown.*<br><br>*Defendants.* | CASE NO. CV01-17-13427<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW the Plaintiff, by and through her counsel of record, and for causes of

action against Defendants alleges as follows:

## JURISDICTION

1.      The events that are the basis of this lawsuit began in May 2016.

2.      The incidents that are the basis of this lawsuit took place in Ada County, State of Idaho.

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**-1-**

3.     Plaintiff filed a complaint with the Idaho Human Rights Commission (hereinafter "IHRC") on or about August 29, 2016.

4.     The Plaintiff filed a complaint with the Equal Employment Opportunity Commission (hereinafter "EEOC") on the same day.

5.     The IHRC conducted an investigation of Plaintiff's claims, and of Defendant SLHS's response.

6.     The IHRC sent a Notice of Right to Sue letter to Plaintiff, which was dated April 28, 2017.

7.     The EEOC sent a Notice of Right to Sue letter to Plaintiff, dated May 16, 2017, adopting the findings of the IHRC.

8.     Plaintiff has complied with all administrative procedures prerequisite to filing this Complaint.

9.     The District Court has jurisdiction of this matter pursuant to Idaho Code § 1-705 and the amount in controversy exceeds $10,000.

10.    Venue lies in this Court under Idaho Code §5-404 because at least one of the Defendants resides and/or conducts business in this county and district.

## PARTIES

11.    Plaintiff Katrina M. Shrader is now, and at all times relevant herein was, a resident of Ada County, State of Idaho.

12.    Defendant St. Luke's Health System, Ltd. (hereinafter "Defendant SLHS") is a not-for-profit health system organized under and by virtue of the laws of the State of Idaho.

13.    Defendant SLHS is headquartered in Boise, Ada County, State of Idaho.

14.    Defendant SLHS was Plaintiff's employer at all relevant times herein.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

15. At all relevant times herein, Defendant Kristie Hanson was the Radiology Department Day Supervisor of Defendant SLHS, Boise Campus.

16. Upon information and belief, Defendant Hanson is now, and at all relevant times herein was, a resident of Ada County, State of Idaho.

17. At all relevant times herein, Defendant Hanson was acting within the course and scope of her employment with Defendant SLHS.

18. At all relevant times herein, Judy Glass was the Director of Medical Imaging of Defendant SLHS, Boise Campus .

19. Upon information and belief, Defendant Glass is now, and at all relevant times herein was, a resident of Ada County, State of Idaho.

20. At all relevant times herein, Defendant Glass was acting within the course and scope of her employment with Defendant SLHS.

21. At all relevant times herein, Defendant Desiree Schafer was the Senior Employee Advocate of Defendant SLHS, Boise Campus.

22. Upon information and belief, Defendant Schafer is now, and at all relevant times herein was, a resident of Ada County, State of Idaho.

23. At all relevant times herein, Defendant Schafer was acting within the course and scope of her employment with Defendant SLHS.

24. At all relevant times herein, Defendant Maureen Askew was the RN Case Manager of Defendant SLHS, Boise Campus.

25. Upon information and belief, Defendant Askew is now, and at all relevant times herein was, a resident of Ada County, State of Idaho.

26. At all relevant times herein, Defendant Askew was acting within the course and scope of her employment with Defendant SLHS.

27. At all relevant times herein, Defendant Pamela Lane was Defendant SLHS Director of Human Resources, Boise Campus.

28. Upon information and belief, Defendant Lane is now, and at all relevant times herein was, a resident of Ada County, State of Idaho.

29. At all relevant times herein, Defendant Lane was acting within the course and scope of her employment with Defendant SLHS.

30. At all relevant times herein, Defendant Lindsey Taffin was a Radiology Department employee of Defendant SLHS, Boise Campus.

31. Upon information and belief, Defendant Taffin is now, and at all relevant times herein was, a resident of Ada County, State of Idaho.

32. At all relevant times herein, Defendant Taffin was acting within the course and scope of her employment with Defendant SLHS.

33. At all relevant times herein, Defendant Nicole Deahl was a Radiology Department employee of Defendant SLHS, Boise Campus.

34. Upon information and belief, Defendant Deahl is now, and at all relevant times herein was, a resident of Ada County, State of Idaho.

35. At all relevant times herein, Defendant Deahl was acting within the course and scope of her employment with Defendant SLHS.

36. At all relevant times herein, Defendant Chris Newton was a Radiology Department employee of Defendant SLHS, Boise Campus.

37. Upon information and belief, Defendant Newton is now, and at all relevant times herein was, a resident of Ada County, State of Idaho.

38. At all relevant times herein, Defendant Newton was acting within the course and scope of his employment with Defendant SLHS.

39. At all relevant times herein, Defendant Hannah Nogle was a Radiology Department employee of Defendant SLHS, Boise Campus.

40. Upon information and belief, Defendant Nogle is now, and at all relevant times herein was, a resident of Ada County, State of Idaho.

41. At all relevant times herein, Defendant Nogle was acting within the course and scope of her employment with Defendant SLHS.

42. Defendants John and Jane Does I through XX, whose true identities are currently unknown, were agents, employees, independent contractors, subdivisions, wholly-owned subsidiaries, or divisions of Defendant SLHS whose acts and/or omissions caused Plaintiff's injuries and damages as alleged herein.

43. Defendants John and Jane Does I through XX, whose true identities are currently unknown, are individuals or entities whose acts and/or omissions caused Plaintiff's injuries and damages as alleged herein.

44. Defendant SLHS is liable for the acts and omissions of all other Defendants in this case under the doctrine of *Respondeat Superior*.

## STATEMENT OF FACTS

### Plaintiff's Pre-Existing Disability

45. Plaintiff was hired on or about March 31, 2015 as a mammographer for St. Luke's Mountain States Tumor Institute (MSTI), part of Defendant SLHS.

46. Prior to her employment with Defendant SLHS, Plaintiff had been diagnosed with Post Traumatic Stress Disorder (PTSD) disability in 2012 or 2013 while Plaintiff served in the military.

47. PTSD is a disability recognized by Americans with Disabilities Act.

48. Defendant SLHS was aware of Plaintiff's disability status as a veteran because it was part of the information Plaintiff provided to Defendant SLHS during the hiring process.

49. Despite Plaintiff's pre-existing PTSD disability, prior to May 2016 Plaintiff required minimal treatment for her PTSD disability and it did not limit her ability to fulfill the essential functions of her employment.

### Plaintiff's First Report of Serious Error

50. Months after she was hired by Defendant SLHS, Plaintiff transferred to Defendant SLHS's Boise campus after applying to and accepting a full-time position as an Operating Room Radiology Technologist in February 2016.

51. Plaintiff was required to complete a training/orientation period prior to taking on employee status.

52. Defendant SLHS's Radiology Department is managed by Defendant Hanson.

53. Soon after the beginning of her orientation as a trainee within the Radiology Department, Plaintiff observed Defendant Taffin mix-up two patients in the emergency room.

54. Plaintiff reported the error to Defendant Glass, as required by Defendant SLHS policies.

55. Defendant Glass stressed the danger of such an error and stated that Defendant SLHS had a "zero tolerance" policy for such errors.

56. Because Plaintiff was a new trainee at the time the error occurred, Defendant Taffin took responsibility for the error and neither she nor Plaintiff was disciplined.

**First Act of Harassment**

57. At the time of the error and Plaintiff's report thereof, Defendant Taffin was part of a group of employees Defendant Glass has unofficially labeled the "All Stars" within the Radiology Department.

58. The other "All Star" employees were Defendants Nogle, Deahl, and Newton.

59. Defendant Hanson supervised the "All Star" employees, as well as Plaintiff.

60. Defendant Hanson appeared to Plaintiff to be friendly with the "All Star" employees and, upon information and belief, socialized with them both while working within the course and scope of her employment with Defendant SLHS, and outside of work.

61. Defendant Taffin often acted as supervisor when Defendant Hanson was absent.

62. Defendant Glass and Defendant Hanson appeared to hold the "All Star" employees in especially high esteem.

63. The evening Radiology Department supervisor at that time, Joan Truxel, warned Plaintiff that her report of Defendant Taffin's error would likely make Plaintiff a target of hostility within the Radiology Department.

64. Indeed, immediately after Plaintiff's report of Defendant Taffin's error to Ms. Glass, Plaintiff began to experience antagonism and hostility from co-workers, including the "All Stars" and Defendant Hanson.

65. The harassment continued until an incident in May 2016 in which three other Radiology Department employees harassed Plaintiff while she was acting within the course and scope of her employment with Defendant SLHS.

66. Plaintiff's supervisor, Defendant Hanson, knew or should have known of this harassment because Defendant Hanson herself had been a party to the harassment of Plaintiff since Plaintiff's report of Defendant Taffin's error weeks earlier.

67. Defendant Hanson knew or should have known of this harassment because Plaintiff had notified the Evening Supervisor, Joan Truxal of what was occurring within the Radiology Department, and how it was affecting Plaintiff's ability to effectively carry out her job duties.

68. As a direct and proximate result of this harassment over the foregoing weeks, culminating in the incident in May 2016, Plaintiff suffered a severe panic attack at work and which caused her to leave her shift.

69. The incident caused Plaintiff to experience symptoms of PTSD including a severe panic attack and debilitating anxiety.

70. From that point forward, Plaintiff began to experience frequent episodes of unexpected and uncontrollable panic attacks and debilitating anxiety with symptoms including headache, rash, tearful episodes, unexplained feelings of terror, severe abdominal pain, loss of bladder and bowel control, and insomnia.

71. Plaintiff reported the harassment to Defendant Hanson, and an internal investigation was initiated.

72. The internal investigation ultimately substantiated Plaintiff's claims of harassment and she received back-pay for the shifts that she missed.

73. Plaintiff was advised by at least one St. Luke's employee advocate to keep a journal in the event any further harassment occurred.

74. Two of the three employees involved in the May 2016 bullying incident of Plaintiff later apologized to Plaintiff.

75. However, the weeks of bullying and antagonism by her co-workers ultimately caused Plaintiff's PTSD disability to recur.

### Plaintiff's Concurrent Efforts to Return to College

76. In approximately early May 2016, Plaintiff informed Defendant Glass of Plaintiff's desire to return to school to obtain her Bachelor of Science degree at Boise State University (BSU).

77. In response, Defendant Glass expressed support for Plaintiff in this endeavor and referred Plaintiff for a tuition reimbursement program available through Defendant SLHS (hereinafter "St. Luke's Program").

78. The St. Luke's Program required a recipient to work full-time with Defendant SLHS during the period in which a recipient is attending school, and to continue full-time employment with Defendant SLHS for at least one year after each tuition reimbursement is received.

79. Plaintiff applied for and was accepted for admission into the St. Luke's Program in May 2016. At the end of each semester Plaintiff was required to submit her costs and grades for the preceding completed semester to receive the tuition reimbursement.

80. According to the St. Luke's Program tuition reimbursement payment schedule, Plaintiff would become eligible to receive a $3,000 tuition reimbursement in August 2016 for completion of BSU's summer semester, and to receive another $3,000 reimbursement in December 2016 after completion of BSU's fall semester.

81. Relying on her acceptance into the St. Luke's Program, Plaintiff began summer college courses at BSU in late May 2016.

82. Plaintiff decided to apply to the Magnetic Resonance Imaging (MRI) and the Nuclear Medicine programs at BSU soon after she began taking summer college classes in May 2016.

83. Either of these certifications would increase Plaintiff's earning potential and advance Plaintiff's employment opportunities.

84. To that end, Plaintiff discovered she was eligible for a second tuition and costs reimbursement opportunity through the Department of Veterans Affairs Vocational Rehabilitation Program (hereinafter "VA Program") and applied for program assistance in June 2016.

85. If accepted to the VA Program, Plaintiff would receive full tuition reimbursement plus a stipend for living expenses during the period of her training, totaling approximately $19,000 for each year of either BSU program.

86. Plaintiff met each requirement of the VA Program application and needed only a letter of recommendation for each of the two BSU programs to complete her application packet.

87. To this end, Plaintiff asked Defendant Glass for two letters of recommendation.

88. Defendant Glass readily agreed to write the two letters of recommendation on Plaintiff's behalf.

89. Plaintiff attended summer semester classes at BSU with the intention of requesting tuition reimbursement upon the completion of the summer semester, according to the guidelines of Defendant St. Luke's Program.

**Plaintiff's PTSD Disability and Reasonable Disability Accommodation Request**

90. Due to the physical and mental suffering she was experiencing resulting from workplace harassment, Plaintiff sought medical care for her PTSD disability in May 2016.

91.  After discussing her PTSD disability with her doctor, Plaintiff submitted a reasonable disability accommodation request to Defendant SLHS.

92.  The request would restrict Plaintiff to daytime shifts only, for a period of two months, to be re-evaluated thereafter by Plaintiff's doctor.

93.  At the time of her disability accommodation request, Plaintiff was still a trainee within the Radiology Department, and did not yet have "employee" status.

94.  Once an individual within the Radiology Department finishes the orientation/training phase, the individual's status changes from "trainee" to "employee."

95.  Department employees are required to be scheduled at least two times per month for an overnight 12 hour on-call shift.

96.  In practice however, many Radiology Department employees are not given on-call overnight shifts.

97.  Employees also have the ability to trade or otherwise avoid scheduled on-call overnight shifts by using the "give away" sheet posted in the Radiology Department.

98.  At the time of her disability accommodation request, Plaintiff was still a "trainee" and was thus not eligible to be assigned to overnight on-call shifts.

99.  At 32 or more hours, a trainee or employee is considered to be "full time," and is thus eligible for benefits and health insurance.

100. Plaintiff was working 36 hours per week, three 12-hour day shifts per week.

101. Plaintiff was receiving hourly pay of approximately $24.00, with an additional supplement of "pay in lieu of" receiving other benefits.

102. Thus, Plaintiff's actual hourly wage was approximately $25.50 per hour.

103. Because Plaintiff was not eligible for on-call shifts as a trainee, her requested accommodation had no practical impact on the Plaintiff's current work schedule.

104. Therefore, Plaintiff's requested accommodation did not impose an undue hardship on Defendant SLHS.

105. On or about May 26, 2016, Plaintiff's reasonable accommodation request was approved by Defendant SLHS.

106. On or about June 8, 2016, Defendant SLHS received documents from Plaintiff's doctor stating that Plaintiff's disability accommodation would be necessary for two months, to be reviewed and possibly extended at the end of that two month period.

107. Plaintiff continued to work the same scheduled day shifts she had been assigned prior to the accommodation approval.

**Radiology Department Posted Schedule and Plaintiff's Reasonable Disability Accommodation**

108. Soon thereafter, Defendant Hanson posted a department-wide shift schedule covering the period from the end of June 2016 through October 2016.

109. The posted schedule did not include any on-call overnight shifts for Plaintiff.

110. The posted schedule continued Plaintiff's three 12-hour daytime shifts per week schedule through the end of October 2016.

111. All shifts within Defendant SLHS Radiology Department appeared to be covered by the posted schedule, and not every employee was scheduled for on-call overnight shifts.

112. Therefore, there was no indication that the Radiology Department was short-staffed or that on-call night shifts were not covered by the available Radiology Department employees.

113. Plaintiff continued to work her scheduled shifts in accordance with her disability accommodation and the posted shift schedule.

**Plaintiff's Second Report of Serious Error**

114. In about June 2016, Plaintiff again observed Defendant Taffin make another serious error in patient care when Defendant Taffin mixed up portable chest radiographs of two twin infants in the Neonatal Intensive Care Unit (NICU), before Plaintiff intervened.

115. Plaintiff understood that the error could have caused serious medical harm to one or both of the infants, up to and including death by impeding and delaying crucial medical treatment of one infant, and/or by causing the other infant to receive unnecessary medical intervention.

116. At the time of the second error, Defendant Taffin was acting as supervisor because Defendant Hanson was not present in the Radiology Department.

117. It appeared to the Plaintiff that Defendant Taffin was attempting to cover up the error.

118. Alternatively, it was not apparent to the Plaintiff that Defendant Taffin had reported or intended to report the error as Defendant Taffin was required to do.

119. Therefore, Plaintiff reported the error to Ms. Truxel, the evening supervisor at that time, according to Defendant SLHS policy.

120. Plaintiff was advised by Ms. Truxel that reporting Defendant Taffin to Defendant Glass might lead to another backlash against the Plaintiff within the Radiology Department, and that Defendant Glass would likely side with Defendant Taffin.

121. Nevertheless, recognizing the gravity of Defendant Taffin's error, Defendant Taffin's apparent intent to cover it up or otherwise not report it in violation of Defendant SLHS policy, and Plaintiff's duty to protect the safety of Defendant SLHS patients, Plaintiff reported Defendant Taffin's error to Defendant Glass.

122. After this report, Defendant Taffin and the other "All Star" employees again became openly hostile and antagonistic to Plaintiff while each was acting within the scope of his or her employment.

123. Plaintiff again suffered increased symptoms of her PTSD and on at least two occasions, was forced to visit the emergency department due to debilitating panic attacks.

124. Plaintiff notified Defendant Hanson of the harassment of Plaintiff by the "All Star" employees.

125. In response to Plaintiff's complaint, Defendant Hanson asked Plaintiff if Plaintiff was just imagining the harassment.

126. In addition, Defendant Hanson stated that it was Plaintiff's responsibility to address any perceived harassment directly with Plaintiff's co-workers, rather than Defendant Hanson becoming involved.

127. Because Plaintiff believed that Defendant Hanson did not intend to intervene, Plaintiff notified Defendant Glass of the harassment by the "All Star" employees.

128. Defendant Glass stated that such conduct by the "All Star" employees had been an issue in the past but that they were "getting better."

129. The conduct that Plaintiff reported to Ms. Truxel and Defendant Glass, and the necessity to make such a report, involved the safety of patients being rendered services by Defendant SLHS.

130. Upon information and belief, the hostility and antagonism experienced from Defendant Taffin and the other "All Star" employees was in retaliation for Plaintiff's reporting of Defendant Taffin's error.

131. Upon information and belief, the failure by Defendant Hanson and/or Defendant Glass to intervene and halt the subsequent retaliatory conduct of Plaintiff's co-workers was in violation of Defendant SLHS policy.

132. Upon information and belief, the failure by Defendant Hanson and/or Defendant Glass to intervene and halt the retaliatory conduct of Plaintiff's co-workers emboldened those co-workers and fostered a hostile work environment for Plaintiff.

### Plaintiff's Disability Accommodation Re-evaluation

133. In approximately June or July, Plaintiff's status changed from Trainee to Employee.

134. Plaintiff's initial reasonable disability accommodation was set to be re-evaluated and possibly extended by Plaintiff's doctor after the initial two month disability accommodation period had ended.

135. Unfortunately, the re-evaluation and disability extension paperwork was not provided by Plaintiff's doctor by the last date of the two month period.

136. Plaintiff explained to Defendant Hanson that Plaintiff was to see Plaintiff's doctor to get Plaintiff's doctor's updated disability accommodation recommendations, but had not yet been able to see her doctor.

137. Defendant Hanson explained that since the Radiology Department schedule was covered through October 2016, the delay did not pose a problem.

138. Therefore, there still was no apparent undue hardship placed on the Radiology Department by Plaintiff's disability accommodation, even in early August 2016.

### Plaintiff's Report of Conduct Which Violated Defendant SLHS Policy

139. In August 2016 Defendant SLGS had a written *Equal Employment Opportunity, Non-Discrimination and Unlawful Harassment Policy.*

---

140. The policy stated, in part, that "conduct or remarks based on . . . sex . . ., which . . . create an . . . offensive work environment may . . . constitute a violation of this policy."

141. The policy goes on to include within the definition of sexual harassment "off color jokes."

142. During approximately the first or second week of August 2016, Plaintiff observed Defendant Deahl and Defendant Newton harassing a BSU Department intern in the presence of several other Radiology Department employees.

143. Plaintiff regarded the conduct to constitute unlawful sex-based harassment and to be in violation of the guidelines set forth in Defendant SLHS's *Equal Employment Opportunity, Non-Discrimination and Unlawful Harassment Policy.*

144. Plaintiff reported the incident to Defendant Hanson, according to Defendant SLHS's policy.

145. After Plaintiff's report of the sex-based harassment to Defendant Hanson, Plaintiff began to experience increased harassment and antagonism from the "All Star" employees while each was acting within the scope of his or her employment.

146. Upon information and belief, the hostility and antagonism experienced from these employees was prohibited retaliation under applicable state and federal law.

147. Upon information and belief, Defendant Hanson failure to intervene was due to the high esteem in which she held the "All Star" employees, and her social relationships with each.

### Defendant Hanson's Wrongful Revocation of Plaintiff's Reasonable Disability Accommodation

148. On or about August 18, 2016, Plaintiff's doctor submitted medical documents to Defendant SLHS to extend Plaintiff's initial disability accommodation beyond the initial period.

149. The extension would keep Plaintiff working the same shifts that she had been since May 2016, and which were already posted on the Radiology Department schedule through at least October 2016.

150. On or about August 24, 2016, Plaintiff received a voice mail from Defendant Askew while Plaintiff was working within the Radiology Department, several hours into Plaintiff's shift.

151. Plaintiff promptly returned Defendant Askew's call and was informed by Defendant Askew that Defendant Hanson had removed Plaintiff from the Radiology Department schedule that had been posted since late May 2016.

152. Defendant Askew stated that Defendant Hanson's rationale for this adverse action was insufficient staffing within the Radiology Department which was causing Defendant Hanson difficulties in covering on-call overnight shifts.

153. Defendant Askew advised Plaintiff that Plaintiff had the option to take leave under the Family Medical Leave Act, which would be unpaid.

154. Plaintiff was aware that some Radiology Department employees had not been given on-call overnight shifts.

155. It was Plaintiff's understanding that staff levels within the Radiology Department had not materially changed.

156. Plaintiff understood that it was common practice within the Radiology Department for employees to get rid of their on-call overnight shifts, and a "give away" sheet was posted in the Radiology Department.

157. Regardless, even when Plaintiff provided this information to Defendant Askew to contradict Defendant Hanson's clearly erroneous rationale for revoking Plaintiff's reasonable accommodation and resulting forced leave of absence, Defendant Askew defended Defendant Hanson's decision.

158. Plaintiff understood that her removal from the posted schedule would not alleviate any purported on-call shift shortages since Plaintiff was not scheduled to work on-call overnight shifts through at least the end of October 2016.

159. Plaintiff understood that any forced leave of absence would remove her only source of income, and would cost her the tuition reimbursement that she had relied on in May 2016 when she began taking summer college courses.

160. Plaintiff was surprised that Defendant Hanson, who had been present in the Radiology Department with Plaintiff in the hours prior to Defendant Askew's phone call, had not discussed the revocation with Plaintiff but had instead asked the Human Resources Department to contact Plaintiff in that regard.

161. Therefore, subsequent to that phone call, Plaintiff immediately walked to Defendant Hanson's office to speak to Defendant Hanson.

162. In their meeting, Defendant Hanson stated that Plaintiff's original disability accommodation had expired in July and she had only received the paperwork extending the disability accommodation from Plaintiff's doctor the previous day, August 23, 2016.

163. Defendant Hanson stated that as a result of the delay, Plaintiff would no longer receive a reasonable disability accommodation.

164. Defendant Hanson stated that Plaintiff is required to be able to work on-call overnight shifts.

165. Defendant Hanson stated that since Plaintiff could only work day shifts Plaintiff would be removed from the posted schedule.

166. Defendant Hanson informed Plaintiff that Plaintiff would no longer be permitted to work the three twelve hour day shifts she had been working for two months, and which were

scheduled to continue through the end of October 2016 according to the posted Radiology Department schedule.

167. Defendant Hanson stated that Plaintiff's reasonable disability accommodation was negatively affecting Defendant Hanson's ability to cover overnight on-call shifts but did not explain how.

168. When Plaintiff questioned Defendant Hanson's rationale for revoking Plaintiff's reasonable accommodation and Plaintiff's complete removal from the posted schedule, Defendant Hanson admitted that the Radiology Department was not short-staffed.

169. Plaintiff asked Defendant Hanson if it would be possible to remain on the schedule and simply give away any on-call shifts she was given, as was common practice within the Radiology Department.

170. Defendant Hanson denied that this was a possibility for Plaintiff citing Plaintiff's disability accommodation.

171. Defendant Hanson's rationale appeared to change and she stated "I can't make accommodations."

172. Defendant Hanson stated "I can't do any restrictions."

173. Defendant Hanson again stated "I don't make accommodations for anybody, ever."

174. Defendant Hanson stated "I don't usually . . . accommodate [be]cause if I . . . do that for one person, then I gotta do it for everyone."

175. Before the conclusion of the meeting Defendant Hanson stated ". . . at least right now we are fully staffed."

176. Defendant Hanson's repeated assertions that disability accommodations were not to be made available to anyone within the Radiology Department were necessarily false, in that

such an accommodation had already been approved and provided to Plaintiff, and then stopped three months later.

177. For all practical purposes, the fact that the supporting medical documentation was not received by Defendant SLHS until approximately August 18, 2016 was not a material breach of the reasonable accommodation agreement Plaintiff had entered into with Defendant SLHS.

178. Consequently, any purported reliance placed on the delay as a justification for reneging on Plaintiff's reasonable accommodation was unjustified.

179. Defendant SLHS had an obligation under the Americans with Disabilities Act to engage in good faith negotiations regarding the need for reasonable disability accommodations.

180. Defendant SLHS was required to modify Plaintiff's reasonable accommodation if the accommodation did not place an undue hardship on Defendant SLHS

181. Plaintiff's doctor's delay in providing paperwork to extend Plaintiff's reasonable disability accommodation did not place an undue hardship on Defendant SLHS as evidenced by the Radiology Department posted schedule of shifts through the end of October 2016, and Defendant Hanson's statements.

182. Upon information and belief, Ms. Hanson's denial of the continuance of Plaintiff's reasonable accommodation was in retaliation for Plaintiff's report of mistakes and/or her reporting of conduct that she reasonably believed was in violation of Defendant SLHS sexual harassment policy, and applicable law.

**Plaintiff's Notification to Defendant Schafer of Defendant Hanson's Wrongful Revocation of Plaintiff's Reasonable Disability Accommodation**

183. On or about August 24, 2016, Plaintiff reported the wrongful revocation of her reasonable accommodation to Defendant Schafer.

184. Plaintiff presented Ms. Schafer with evidence which clearly contradicted the stated reasons for Defendant Hanson's revocation of Plaintiff's reasonable disability accommodation.

185. The evidence Plaintiff presented included the four month Radiology Department schedule that had been posted two months earlier, the authorized on-call shift "give away sheet," and the names of Radiology Department employees who had not been assigned on-call shifts for months.

186. Based upon this evidence, Defendant Schafer contacted Defendant SLHS to advise that Plaintiff be returned to her position immediately.

187. On or about August 29, 2016, Defendant Schafer notified Plaintiff that Plaintiff could return to work, with reasonable accommodations reinstated, and would receive back-pay for the shifts she missed since August 24, 2016.

188. Plaintiff returned to work on August 31, 2016.

<u>Hostile Work Environment</u>

189. Upon Plaintiff's return to work, Defendant Hanson exhibited obvious animus toward Plaintiff.

190. Plaintiff also experienced increased hostility and antagonism from the "All Star" employees.

191. In addition, over the next several days, it became apparent to Plaintiff that knowledge of her disability and the events relating to her accommodation revocation were common knowledge within the Radiology Department.

192. Plaintiff believed that Defendant Hanson had disclosed this information in violation of Plaintiff's right to privacy under HIPAA or other applicable law.

193. Upon information and belief, Defendant Tannin stated that if a person has a disability, they cannot work in the Radiology Department.

194. Upon information and belief, Defendant Newton stated that if a person is unhappy they should be given a shotgun and placed in a room alone so the problem would take care of itself.

195. Upon information and belief, Defendant Deahl stated that if she could do her job while pregnant, Plaintiff can do the job with her disability.

196. Plaintiff believed that the hostility and antagonism from Plaintiff's co-workers and Defendant Hanson was related to Plaintiff's report to Defendant Schafer of Defendant Hanson's wrongful and arbitrary revocation of Plaintiff's reasonable disability accommodation on or about August 24, 2016, the subsequent reversal of Defendant Hanson's decision, and the fact that Plaintiff required a reasonable disability accommodation from Defendant SLHS.

197. Defendant SLHS's *Equal Employment Opportunity, Non-Discrimination and Unlawful Harassment Policy* states, in part, that "St. Luke's prohibits unlawful harassment or discrimination on the basis of an employee's membership in any protected class."

198. The Policy lists disability as a protected class.

199. Because Plaintiff believed that the retaliatory conduct of her co-workers and Defendant Hanson was based on Plaintiff's membership in a protected class, Plaintiff believed that Defendant SLHS's *Equal Employment Opportunity, Non-Discrimination and Unlawful Harassment Policy* applied.

200. The Policy states "St. Luke's encourages employees who feel they have been subject to unlawful harassment to come forward. An investigation will be performed, and employees who are found to have violated this policy will be subject to disciplinary action, up to and including termination from employment."

201. The Policy states "Conduct or remarks based on . . . disability, which unreasonably interfere with any individual's work performance or create an intimidating, hostile, or offensive work environment, may also constitute a violation of this policy."

202. The Policy states "Employees will not be subjected to retaliation for making complaints or participating in an investigation about unlawful harassment or discrimination."

203. The Policy states "Employees who commit acts of retaliation will be subject to disciplinary action, up to and including termination from employment."

204. The Policy states "Conduct prohibited by this policy, whether verbal, visual, written, or physical will not be tolerated. If an employee believes that s/he has been subject to unlawful harassment or discrimination by anyone associated with St. Luke's, the employee should: . . . report the matter to one of the following people: . . . Supervisor and the Department Director."

205. The Policy states "The report may be oral or in writing and state the specific details of the behavior. It is helpful to provide details of dates, times, places, and witnesses, if any, of the behavior. The employee's identity and the nature of the complaint will be kept as confidential as possible."

206. The Policy states "All complaints of alleged unlawful harassment or discrimination will be promptly investigated."

207. The Policy states "In determining whether or not the alleged conduct constitutes unlawful harassment or discrimination, the Director of Human Resources, Employee Advocate, Vice President of Human Resources, or designee, will investigate the circumstances, the nature of the complaint, and the context in which the alleged incident ocurred [sic]."

208. The Policy states "Although St. Luke's will endeavor to conduct its investigation in a discreet fashion, the investigation process may require disclosure of certain information about the complaint and the identity of associated individuals. Individuals contacted in connection with an investigation will be asked to maintain the confidentiality of any information disclosed concerning the complaint or the pending investigation."

209. The Policy states "St. Luke's will attempt to provide information to the individual(s) making a complaint to the extent it does not compromise the investigation process. Once the investigation is complete, Human Resources will contact the employee and advise that the investigation has been completed and that appropriate action has been taken."

210. The Policy states "If the employee is not satisfied with the resolution, s/he may then take the complaint through the formal written employee advocacy process at the Administrator/VP level and then to the Chief Operating Officer or designee for resolution."

211. The Policy states "No individual who is involved in the investigation process will be subjected to retaliation and reprisal."

212. Therefore, in accordance with the Policy, Plaintiff notified her Supervisor, Defendant Hanson, of the retaliatory conduct and harassment by Plaintiff's co-workers and Defendant Hanson herself.

213. In accordance with the policy, Plaintiff provided an oral report to Defendant Hanson, providing "specific details of the behavior" and "dates, times, places, and witnesses" thereof.

214. However, Defendant Hanson again appeared to be unwilling to intervene or accept the validity of Plaintiff's concerns.

215. Upon information and belief, Defendant Hanson's failure to act was a violation of the Policy.

216. Upon information and belief, Defendant Hanson did not initiate a "prompt investigation" in accordance with the Policy.

217. Upon information and belief, Defendant Hansen did not notify "the Director of Human Resources, Employee Advocate, Vice President of Human Resources, or designee, [to] investigate the circumstances, the nature of the complaint, and the context in which the alleged incident ocurred [sic]."

218. Upon information and belief, Defendant Hanson did not keep the details of Plaintiff's complaint confidential.

219. Instead, Defendant Hanson's demands made upon Plaintiff and the work place environment in which Plaintiff performed services for the Radiology Department were starkly different from those of other Radiology Department employees and trainees since Plaintiff's return to the Radiology Department.

220. Defendant Hanson monitored Plaintiff's activities and movements within the Radiology Department where and to a level which Defendant Hanson previously had not.

221. Department employees and trainees report their whereabouts within the Radiology Department on a centrally located "Accountability Board."

222. Now, despite Plaintiff posting her location on this board as she had always done, Defendant Hanson instructed Plaintiff to also place sticky notes on Defendant Hanson's desk of Plaintiff's specific location within the Department (i.e. the restroom, etc.).

223. Plaintiff also began to carry a phone with her at all times because Defendant Hanson now frequently called looking for Plaintiff, despite Plaintiff's posting on the Accountability Board and placing sticky notes on Defendant Hanson's desk.

224. Prior to the events earlier that month, Plaintiff was allowed to do her homework when there was "down time" in the Radiology Department.

225. However, Defendant Hanson no longer allowed Plaintiff this opportunity, even while other Radiology Department employees and trainees lounged, watched YouTube videos, played games or engaged in social media on their phones, etc.

226. Plaintiff was now expected to find tasks to complete during down time, while other Radiology Department employees and trainees were allowed to do non-work related activities, which Defendant Hanson often joined.

227. Defendant Hanson's constant monitoring and criticism made Plaintiff feel embarrassed, demeaned, and singled out.

228. Plaintiff's work performance and ethic were exemplary, thus Defendant Hanson's focus on Plaintiff was puzzling.

229. Plaintiff began experiencing increased panic attacks, insomnia, severe anxiety, stomach pain, and tearfulness due to the constant antagonism and enmity of her co-workers and Defendant Hanson's increasingly unreasonable and disparate demands of Plaintiff.

230. Plaintiff again sought assistance from Defendant Schafer.

231. Defendant Schafer stated her concerns that, unless Plaintiff took a leave of absence from her position, the retaliation against Plaintiff by Plaintiff's co-workers and Defendant Hanson would continue to worsen.

232. Defendant Schafer stated her concerns that, unless Plaintiff took a leave of absence from her position, Plaintiff's co-workers and Defendant Hanson would push Plaintiff until Plaintiff made a mistake, to provide a pretext for firing Plaintiff.

233. Upon information and belief, after Plaintiff's complaint to Defendant Schafer of the retaliatory and harassing conduct by Plaintiff's co-workers and Defendant Hanson, Defendant Schafer did not initiate a "prompt investigation" in accordance with Defendant SLHS's *Equal Employment Opportunity, Non-Discrimination and Unlawful Harassment Policy*.

234. Instead, Defendant Schafer placed the onus on Plaintiff by suggesting that Plaintiff take an unpaid leave of absence as a solution to the retaliation Plaintiff was being subjected to on a regular basis.

### Plaintiff's Forced Leave of Absence

235. On or about September 7, 2016, approximately one week after Plaintiff's reasonable accommodation had been reinstated, Defendant Hanson called Plaintiff into her office to discuss Defendant Hanson's expectations of Plaintiff.

236. Rocky Patel, the Department evening supervisor, was also present.

237. During this meeting, Defendant Hanson reprimanded Plaintiff for several incidents that had allegedly occurred that day and the day prior.

238. Defendant Hanson's complaints regarding Plaintiff's actions were puzzling because, as Plaintiff attempted to explain to Defendant Hanson, Plaintiff had followed Radiology Department policy and common practices, and Defendant Hanson's own previous instructions to Plaintiff.

239. Regardless, Defendant Hanson repeatedly scolded Plaintiff, leaving Plaintiff confused and unsure of Defendant Hanson's expectations of her moving forward.

240. Plaintiff experienced a severe panic attack after this meeting.

241. Plaintiff again sought assistance from Defendant Schafer.

242. Defendant Schafer explained that this was precisely the tactic Defendant Schafer had expected from Defendant Hanson and what Defendant Schafer had warned Plaintiff about only days earlier.

243. Again, rather than intervening to alleviate the hostile working conditions Plaintiff was confronted with, Defendant Schafer recommended that Plaintiff take an unpaid leave of absence from her position.

244. Because Defendant Schafer's statements to Plaintiff led Plaintiff to believe that she would be subject to continued worsening retaliation by her coworkers and Defendant Hanson, and that her complaints thereof would not be investigated or stopped by Defendant SLHS, Plaintiff felt that she had no practical choice but to follow Defendant Schafer's suggestion and take an unpaid leave of absence until action could be taken to remedy the hostile work environment Plaintiff was subject to.

245. As a direct and proximate result of Defendant Hanson's conduct and Defendant Schafer's failure to intervene, Plaintiff had no practical alternative to applying for FMLA leave.

246. But for Defendant Hanson's and Defendant Schafer's actions described above, Plaintiff would not have been required to go on FMLA leave.

247. The only option available to Plaintiff on or about September 7, 2016 was to go on unpaid FMLA leave, thus she has not received income since then.

248. Plaintiff began unpaid FMLA leave on or about September 12, 2016.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**
-28-

249. This caused Plaintiff to lose her only source of income.

250. Plaintiff's unpaid leave has caused her to become ineligible for tuition and costs reimbursement for the BSU summer and fall semesters she completed in 2016 because she was unable to fulfill the requirement that she work for Defendant SLHS for a year after the completed semester.

251. Therefore, she did not receive the tuition reimbursement that she relied upon in entering and completing the 2016 summer semester.

252. Subsequent to September 7, 2016, Plaintiff was notified by Defendant Schafer that Defendant Hanson and Radiology Department employees including Defendants Taffin, Deahl, Newton, and Nogle were to receive "education" regarding Defendant St. Luke's harassment policies.

253. This information led Plaintiff to believe that Defendant SLHS would comply with its *Equal Employment Opportunity, Non-Discrimination and Unlawful Harassment Policy*.

254. Therefore, Plaintiff believed that the retaliation and harassment would cease, and she would soon be able to return to her position within the Radiology Department, which she left unwillingly on September 7, 2017, on the advice of Defendant Schafer.

255. Upon information and belief, in their supervisory roles within Defendant SLHS, Defendants Hanson, Glass, and Schafer had a duty to promptly investigate Plaintiff's complaints of retaliation.

256. Upon information and belief, Defendants Hanson, Glass, and Schafer failed to investigate Plaintiff's complaints of retaliation, in violation of Defendant SLHS policy.

257. Upon information and belief, no disciplinary action has been taken against Defendants Hanson, Deahl, Taffin, Newton, or Nogle as a result of Plaintiff's complaints of retaliation in violation of Defendant SLHS.

258. Instead it appears that Defendant SLHS's solution to Plaintiff's complaints has been to simply get rid of Plaintiff.

**Indications that Defendant SLHS Has Hidden and/or Destroyed Material Evidence**

259. Sometime in mid- to late-September, Plaintiff returned to the Radiology Department to gather some personal items were present in Plaintiff's Radiology Department locker when Plaintiff left her shift on September 7, 2016.

260. Plaintiff discovered that the journal Plaintiff had been keeping on the advice of St. Luke's employee advocates, including Defendant Schafer, to record the adverse events occurring within the Radiology Department was missing from Plaintiff's locker.

261. Plaintiff checked her Radiology Department email and discovered that many emails she had saved relating to and documenting the events described above had been deleted.

262. Those emails had been present in Plaintiff's email account prior to her leaving the Department on September 7, 2016.

263. Plaintiff checked her "deleted" email file and discovered that it had been emptied.

264. The emails had been deleted by someone other than the Plaintiff after Plaintiff began her unpaid leave of absence on September 7, 2016..

265. Upon information and belief, the emails were deleted and the journal was removed from Plaintiff's locker during the pendency of the IHRC investigation, and after Defendant St. Luke's had retained counsel in the IHRC matter.

266. The emails and journal contained information and evidence adverse to the Defendants named herein.

**Defendant SLHS Makes Plaintiff's Original Position Unavailable To Plaintiff**

267. Plaintiff continued treatment for her PTSD disability and began to recover from the physical and emotional suffering she had experienced for months.

268. On or about December 5, 2016, Plaintiff received a phone call from Defendant Lane, notifying Plaintiff that unless she returned to work immediately, her unpaid FMLA leave would be exhausted and her only option would be to take unpaid, unprotected medical leave.

269. Upon information and belief, Plaintiff's original position within the Radiology Department was still open for Plaintiff's return.

270. Defendant Lane stated that once Plaintiff was on unprotected medical leave Defendant SLHS could post Plaintiff's position for hire at any time, and the position could be filled by someone else.

271. However, Defendant Lane assured Plaintiff that Plaintiff would be notified if the position was about to be posted.

272. Plaintiff informed Defendant Lane of Plaintiff's intent to meet with her doctor so that she could return to her position in the Radiology Department.

273. Relying on Defendant Lane's assurances that Plaintiff would be notified if her original Radiology position was posted for hire, Plaintiff received medical clearance from her doctor to return to her position, with the original disability accommodation intact.

274. Plaintiff's reasonable disability accommodation had been in force on September 7, 2016 when Plaintiff began her unpaid leave of absence from her position, and Plaintiff's disability accommodation had essentially been ratified when Plaintiff was reinstated on

August 31, 2016 and Defendant Hanson's revocation of Plaintiff's accommodation was reversed.

275. The original accommodation limited Plaintiff to daytime shifts, and no on-call duty.

276. Other than Plaintiff's need for day time shifts only, Plaintiff remained fully capable of performing the essential functions of her job, just as she had been able, prior to going on unpaid leave.

277. Plaintiff was not notified that her shift was about to be posted and Plaintiff was looking forward to returning to work.

278. Plaintiff called and left a message for Defendant Lane on or about December 22, 2016 in an effort to facilitate her return to her original Radiology Department position.

279. Upon information and belief, Defendant Lane did not return Plaintiff's call, nor did any other representative of Defendant SLHS.

280. On or about January 3, 2017, Plaintiff again called Defendant Lane and left a message expressing Plaintiff's desire to return to work.

281. On or about January 4, 2017, Plaintiff was contacted by Defendant Glass.

282. Defendant Glass stated that Defendant SLHS had posted Plaintiff's Radiology Department position on or about December 10, 2016, just days after Plaintiff had expressed to Defendant Lane Plaintiff's desire to return to Plaintiff's position, and Defendant Lane's assurance that Plaintiff would be notified if Plaintiff's position was posted for hire.

283. According to Defendant Glass, Defendant SLHS had filled the position because "we can't do without a body."

284. Plaintiff expressed her surprise at Defendant SLHS's posting of the position days after Plaintiff expressed her intention to return, and Defendant SLHS's failure to notify Plaintiff of its decision to post Plaintiff's position for hire.

285. Defendant Glass instructed Plaintiff to notify Defendant SLHS when Plaintiff obtained a "final release" from Plaintiff's doctor and Defendant SLHS would "see what we have."

286. Plaintiff understood this to mean that she would need to be cleared by her doctor to return to work without the need for a disability accommodation.

287. Plaintiff was told that, since her original position had been filled, the only available position in the Radiology Department was a part-time evening position.

288. Plaintiff was unable to work evening shifts due to her disability.

289. On or about the same day, Defendant Lane contacted Plaintiff and Defendant Lane agreed that Defendant SLHS had not contacted Plaintiff when Plaintiff's Radiology Department position had been posted for hiring.

290. Defendant Lane stated that Plaintiff should have been notified at that time.

291. However, Defendant Lane stated that Plaintiff's Radiology Department position had only been offered to an applicant but had not yet been filled, in contrast to Defendant Glass's earlier statement to Plaintiff.

292. Defendant Lane advised Plaintiff that Plaintiff was still an employee of Defendant SLHS.

293. Defendant Lane stated that the position was still Plaintiff's until and unless the position was accepted by the applicant.

294. Approximately two days later, Defendant Lane again called Plaintiff to tell her that Plaintiff's position had been filled and was no longer available to Plaintiff.

295. Since Plaintiff's Radiology Department position was no longer available to Plaintiff, because only evening shifts were available, and because it was Plaintiff's understanding that Defendant SLHS required a doctor's release stating that Plaintiff no longer required a disability accommodation if Defendant SLHS was to allow her to return to work, Plaintiff continued to treat with her doctor to continue to improve medically and emotionally.

296. Plaintiff discovered she was pregnant in February 2017.

297. On March 29, 2017, Plaintiff received an unexpected email from Defendant Shafer stating that, approximately one month prior, on February 28, 2017, Plaintiff's unpaid protected medical leave had been exhausted.

### Defendant SLHS's ADA Interactive Process

298. In the March 29, 2017 email, Ms. Shafer instructed Plaintiff that Plaintiff would be terminated from Defendant SLHS employment unless Plaintiff contacted Defendant SLHS with a release to return to work or to resume the ADA interactive process to determine if there is a need for a reasonable disability accommodation by April 5, 2017.

299. Defendant Schafer's email was the first communication Plaintiff had received regarding the end of Plaintiff's unpaid medical leave.

300. Defendant Schafer's email was also the first notification that Plaintiff could seek a reasonable accommodation in the workplace, as the previous communications from Defendant SLHS were that Plaintiff would need to obtain a final release from her doctor to return to work.

301. Indeed, in the multiple phone calls between Plaintiff and Defendants Glass and Lane in early January 2017, Plaintiff was not informed of any opportunity to continue her

reasonable disability accommodation, which would have allowed Plaintiff to return to work.

302. Because Plaintiff had been essentially unemployed and without income between September 7, 2016 and March 28, 2017, Plaintiff regarded Defendant SLHS's offer to resume the ADA interactive process for determining a reasonable accommodation on March 29, 2017 as a sham offer amounting to no more than a pretext given the fact that for all practical purposes Plaintiff had been terminated from her employment on September 7, 2016 when Defendant SLHS essentially refused to alleviate the harassment of and retaliation against Plaintiff.

303. Moreover, contrary to Defendant SLHS's representations, there was no need for Plaintiff to undergo an interactive process given that the necessary disability accommodation was well established and Defendant SLHS could have simply offered Plaintiff her job back with the reinstatement of her previous reasonable accommodation prior to posting and filling Plaintiff's position in December 2016.

304. Due to all of the foregoing events, by March 29, 2017 Plaintiff had become discouraged and depressed.

305. Plaintiff felt that the offer made to her was made solely because Defendant SLHS had realized that its conduct, and that of its employees, violated state and federal law and was actionable.

306. Consequently, Plaintiff chose to proceed to resolve her dispute with Defendant SLHS through the judicial system.

307. On March 30, 2017, Plaintiff contacted Defendant Schafer to ask why Plaintiff had not been contacted since January 2017, or notified of the opportunity to resume the ADA

interactive process, especially since Plaintiff had stressed her desire in December 2016 to return to work.

308. Defendant Schafer responded on March 31, 2017 that she had sent a letter to Plaintiff by certified mail in early December 2016 regarding Plaintiff's option to resume the ADA interactive process and had not received a response from Plaintiff.

309. Defendant Schafer stated that it had not been Ms. Glass's or Ms. Lane's function to notify Plaintiff of the opportunity to resume the ADA interactive process, and that the responsibility belongs to Defendant Schafer's department.

310. Defendant Schafer advised Plaintiff that Defendant SLHS would identify open positions that Plaintiff could perform with a reasonable accommodation, and for which Plaintiff met the minimum standards.

311. Plaintiff understood this to mean that Defendant SLHS would identify radiographer positions, and reinstate Plaintiff a reasonable disability accommodation.

312. To that end, on April 4, 2017, Plaintiff notified Defendant Schafer that there were currently three open radiology position within Defendant SLHS, two of which fulfilled Plaintiff's disability accommodation requirement of day shifts, and which were within the scope of Plaintiff's training, experience, and education.

313. Plaintiff also explained to Defendant Schafer Plaintiff's revived concerns about returning to the Radiology Department if there was still confusion regarding how managers were to handle ADA issues, based on Defendant Schafer's statements in her March 31, 2017 emails.

314. Defendant Schafer responded later that day that Plaintiff would "not be returning to that position or department."

315. Plaintiff emailed Defendant Schafer on April 5, 2017 to ask for clarification on Defendant Schafer's statement since Plaintiff's only professional certification and degree are in Radiology.

316. On April 7, 2017, Plaintiff received an email from Maureen Brosnan, St. Luke's RN Case Manager, seeking information to begin the ADA interactive process.

317. Plaintiff provided information to Ms. Brosnan in this regard.

### Defendant SLHS Recruitment Process

318. In addition to Plaintiff's original disability accommodation requirements, on or about May 15, 2017, Plaintiff's doctor placed Plaintiff on certain temporary physical restrictions to last until January 2, 2018, or earlier, at Plaintiff's obstetrician's discretion, due to Plaintiff's pregnancy.

319. Plaintiff's doctor provided a Provider Activity Status Report (hereinafter "Status Report") to Plaintiff that presented Plaintiff's physical limitations and expressly stated that the restrictions were temporary in nature.

320. Plaintiff's temporary restrictions included no lifting of more than 20 pounds; no repetitive stooping, bending, or twisting; no prolonged vibration; no pushing or pulling of more than 20 pounds; and no standing for more than one hour at a time without a break.

321. The temporary restrictions did not preclude Plaintiff from returning to a radiographer position.

322. Plaintiff provided the Status Report to Defendant Schafer.

323. On or about May 30, 2017, Plaintiff met with Defendant Schafer to discuss Plaintiff's return to work and to fill out necessary paperwork in that regard.

324. Defendant Schafer asked Plaintiff to complete a Recruitment Form, which Defendant Schafer had already partially completed on Plaintiff's behalf.

325. The Recruitment Form is purportedly designed to assist St. Luke's recruiters in finding Plaintiff a position within the St. Luke's system.

326. Defendant Schafer had listed each of Plaintiffs temporary restrictions under the "Permanent Restrictions" section prior to meeting with Plaintiff.

327. Plaintiff asked why her temporary restrictions were listed as permanent on the form.

328. Defendant Schafer made clear that she understood that the restrictions were temporary.

329. Defendant Schafer stated that it would be best to list the temporary restrictions in the Permanent Restrictions section to avoid Plaintiff having to disclose Plaintiffs pregnancy to potential managers until the "meet and greet" phase of the process.

330. Defendant Schafer stated that once she received a pool of potential positions for Plaintiff, Plaintiff and Defendant Schafer could discuss whether Plaintiff wanted to disclose to the potential job that Plaintiff would be requiring maternity leave in October 2017.

331. Based upon Defendant Schafer's representations, Plaintiff agreed to list her temporary pregnancy restrictions in the "Permanent Restrictions" area of the form.

332. Defendant Schafer stated that Defendant SLHS would identify "good [job] matches" for Plaintiff.

333. Plaintiff completed the remainder of the Recruitment Form to include her training as a radiographer, the salary she was earning when she went on FMLA in September 2016, her strengths, and her job skills.

334. The Recruitment Form requested Plaintiff's "dislikes," to which Plaintiff responded "'desk' positions."

335. Plaintiff submitted the Recruitment Form, along with Plaintiffs current resume, to Ms. Schafer on or about June 1, 2017.

### Defendant SLHS Precludes Plaintiff From Clinical Employment Due To Her Need For Disability Accommodation, and Pregnancy

336. On or about June 26, 2017, Plaintiff was contacted by Didi Axtman, HR Specialist with Defendant St. Luke's to notify Plaintiff that Defendant SLHS job recruiters had identified a position for Plaintiff.

337. The position was that of "intake coordinator" for the Defendant SLHS's Concussion Clinic.

338. The main job duty of the "intake coordinator" position is to speak with patients or their families by phone to coordinate concussion or traumatic brain injury care.

339. The position requires the intake coordinator to sit at a desk for most of the day.

340. The position requires the intake coordinator to essentially follow a script to obtain basic information, and input that information into the computer.

341. The position included a minimum requirement that an applicant to be "knowledgeable in the area of brain injury, specifically concussion."

342. Plaintiff does not meet this requirement because she does not have knowledge in the area of brain injury, or concussion.

343. The position is not related in any way to Plaintiff's training, education, or experience as an operating room and mammography radiographer.

344. Meanwhile, at the time of this email, Plaintiff easily located open radiology positions within Defendant SLHS which were daytime shifts, squarely within the scope of Plaintiff's training and degrees, and commensurate with Plaintiff's previous salary which had not been offered as opportunities to Plaintiff.

345. On or about July 6, 2017, Plaintiff had a teleconference with Ms. Schafer and Ms. Axtman regarding the intake coordinator position.

---

346. Ms. Schafer confirmed repeatedly that the intake coordinator position is mostly a telephone-related position, and "100% a desk job."

347. When questioned by Plaintiff, Defendant Schafer stated that clinical positions would not be offered as options for Plaintiff "unless something changes with your restrictions."

348. Defendant Schafer stated that, in addition to Plaintiff's temporary restrictions, Plaintiff's "permanent restriction" limiting Plaintiff to day shifts meant that only desk positions would be offered as potential positions for Plaintiff.

349. Defendant Schafer stated that Plaintiff's "permanent restriction" to daytime shifts prevented Plaintiff from returning to a clinical position due to the "on-call requirement" of clinical radiology shifts

350. This was the same rationale Ms. Hanson relied upon in August 2016 when she wrongfully revoked Plaintiff's reasonable accommodation, after which Plaintiff was immediately reinstated to her position with back-pay at Defendant Schafer's own direction.

351. Therefore, Defendant Schafer knew or should have known that denying Plaintiff her reasonable disability accommodation for the same reasons stated by Defendant Hanson in August 2016 was wrongful.

352. Defendant Schafer had knowledge that Plaintiff's disability accommodation, for which the entire ADA interactive process was purportedly facilitating, would prevent Plaintiff from working on-call shifts.

353. Defendant Schafer was constructively revoking any opportunity for Plaintiff to find employment within Defendant SLHS within the scope of Plaintiff's training, education, and experience as a clinical radiographer.

354. Plaintiff again explained that her "physical restrictions" were those temporary, which Defendant Schafer understood in May 2017.

355. The physical restrictions had been made permanent by Ms. Schafer, not Plaintiff's doctor.

356. Defendant Schafer misrepresented the impact to Plaintiff's job opportunities if Plaintiff's temporary restrictions were listed as "permanent" on the Recruitment Form, that such action would limit Plaintiff to highly unsuitable positions within Defendant SLHS.

357. Defendant Schafer reiterated that, regardless of the temporary restrictions, Plaintiff would not be eligible for a clinical position unless she can work nights, on-call.

358. Ms. Schafer confirmed that if Plaintiff accepted the intake coordinator position, Plaintiff would be unable to transfer out of that position for at least a year, at which time Plaintiff could apply for a clinical position that did not have an on call requirement, if such a position was avilable.

359. However, virtually all clinical jobs have an on-call requirement, thus Plaintiff would be practically barred from all clinical jobs for which she is trained, and which she was able to perform prior to Plaintiff's forced leave of absence in September 2016.

360. Defendant Schrader conceded that Plaintiff could transfer out of the intake coordinator position before the end of a twelve month period only if the Concussion Clinic manager agreed.

361. Plaintiff questioned Ms. Schafer about the salary of an intake coordinator and reminded Ms. Schafer that Plaintiff had been making over $24 per hour in her original clinical position.

362. Ms. Schafer admitted that salary was one factor that she had not investigated prior to offering the intake coordinator position to Plaintiff but that Defendant SLHS would do its best to keep Plaintiff at a similar salary level.

363. Upon information and belief, positions similar in nature to the intake coordinator position Plaintiff had been offered paid a salary of approximately $10/hour, far below Plaintiff's previous salary as a clinical radiographer in the Radiology Department.

364. When Plaintiff questioned the appropriateness of the intake coordinator position to Plaintiff's training, education, experience, and previous salary, Defendant Schafer stated that St. Luke's only requirements under that ADA placement process are to identify a position (1) for which Plaintiff meets the minimum job requirements, and (2) that meets Plaintiff's restrictions.

365. However, Plaintiff did not meet the minimum requirements of the intake coordinator position.

366. Defendant Schafer stated that beyond those two requirements, Defendant SLHS "may" take into account salary level, whether the prospective job is a "good fit," and hiring manager input.

367. Ms. Schafer explained that because Plaintiff lost her position due to unpaid medical leave, Defendant St. Luke's only obligation under the ADA interactive process is to find "any job" that it deems to be a suitable position for Plaintiff.

368. Plaintiff asked why she was able to receive an accommodation in her previous clinical position but now the same accommodation was not even a possibility.

369. Defendant Schafer replied again that Plaintiff's restrictions were preventing Defendant SLHS from "even considering" jobs that weren't essentially desk jobs.

370. However, when Plaintiff reminded Ms. Schafer that her temporary restrictions also required Plaintiff to be able to switch positions every hour or so, Ms. Schafer replied that she did not know what accommodations were available, and that sometimes Defendant St. Luke's provides some employees with a standing desk accommodation.

371. Ms. Schafer continued that Plaintiff could probably stand up and shake her legs out between phone calls.

372. Ms. Schafer assured Plaintiff that she would ask Talent Acquisition to look for other opportunities for Plaintiff, and the salary for the Concussion Clinic intake coordinator position.

373. Later that day, July 6, 2017, Plaintiff emailed Defendant Schafer to express her frustration and dismay that the one position Defendant SLHS identified for Plaintiff was a significantly unsuitable position, while open radiographer positions were available within Defendant SLHS.

374. Plaintiff included lists of these jobs, including a current mammography technician position, with day time shifts, in Boise.

375. Not only did that open position fit perfectly Plaintiff's within training, education, and experience, it required daytime work only, paid a salary comparable to that which Plaintiff was earning in September 2016, and Plaintiff worked within the Mammography Department for almost one year prior to transferring to the Radiology Department in February 2016.

376. Plaintiff stated that she understood from the events that have occurred and Defendant Schafer's statements that Defendant SLHS was once again effectively unreasonably revoking or denying Plaintiff the same reasonable disability accommodation Plaintiff had

worked with successfully prior to her forced leave resulting from the retaliation related to the first unreasonable revocation of her disability accommodation.

377. Plaintiff also expressly stated that her pregnancy-related restrictions are temporary.

378. Upon information and belief, Defendant Schafer did not respond to Plaintiff's email.

### Defendant SLHS's Inexplicable Partial Reversal of Arbitrary Limitations Placed on Plaintiff's Potential Job Opportunities

379. On July 18, 2017, Defendant Schafer emailed Plaintiff to inform her that "a flex Rad Tech" position had been identified for Plaintiff, and asked Plaintiff for her availability for a meeting with the manager of that department.

380. A "flex" position requires an employee to work days, nights, and weekends, and does not guarantee the employee sufficient hours to reach consistent "full time" status.

381. Thus Plaintiff would be unlikely to qualify for benefits, or "pay in lieu of" addition to her salary that she was earning prior to her forced leave in September 2016.

382. If Plaintiff were to accept this position, she would be forced to decline the night shifts, but would be held responsible for finding coverage for each such shift.

383. Finally, Plaintiff would be ineligible for pay increases that come only with full time status.

384. This position is a clinical position, which Defendant Schafer had repeatedly asserted would not be considered by Defendant SLHS as an option for Plaintiff.

385. Defendant Schafer repeatedly stated to Plaintiff that clinical positions are not available to Plaintiff due to Plaintiff's need for a reasonable disability accommodation limiting Plaintiff to day shifts only.

386. Although Defendant SLHS is now inexplicably willing to offer Plaintiff a clinical position, the one clinical position it offered left Plaintiff without the benefits of a full-time position,

and would impose a burden on Plaintiff to cover any night shifts she is scheduled from week to week.

387. Defendant SLHS continues to unreasonably deprive Plaintiff of any real opportunity to return to the job, salary, and benefits Plaintiff had before she was forced to take leave in September 2017, even while such opportunities are available within Defendant SLHS.

388. Between May 30, 2017 and July 18, 2017, the choices presented to Plaintiff by Defendant Schafer were to (1) accept a lower paying intake coordinator position not within the scope of Plaintiff's training, education, or experience as a radiographer, to last for a minimum of twelve months; (2) forego her need for a reasonable disability accommodation as a condition of returning to a clinical radiographer position; or (3) face termination of Plaintiff's employment with Defendant SLHS altogether.

389. Curiously, on July 18, 2017, after repeated representations that Plaintiff would not even be considered for clinical positions due to her disability "restrictions" to day shifts only, Defendant Schafer notified Plaintiff of one part-time clinical position that likely included night shifts, which excluding the several other radiographer positions open for hire.

390. After Plaintiff subsequently questioned Defendant Schafer on the sudden change, and asked for more suitable clinical positions to be offered, Defendant Schafer began offering additional and increasingly better suited radiographer positions to Plaintiff.

### Plaintiff's Damages Resulting From Defendants' Acts And Omissions

391. Prior to the events of August 2016, Defendant Glass had stated to Plaintiff that one of the two letters of recommendation required by the VA Program was completed and the other was being finalized, and that both would be forthcoming soon.

392. However, Defendant Glass did not provide either letter to Claimant, effectively making Claimant ineligible for the VA Program, and impeding Plaintiff's ability to apply to either the Magnetic Resonance Imaging (MRI) or the Nuclear Medicine programs at BSU due to inability to pay.

393. The harassment and retaliation of her co-workers Plaintiff endured after reporting what she believed to be sex-based harassment caused Plaintiff to suffer severe panic attacks, loss of sleep, depression, and other physical manifestations of emotional distress.

394. The only option available to Plaintiff on or about September 7, 2016, as expressed by Defendant Schafer, was to go on unpaid FMLA leave, followed by unprotected medical leave, depriving Plaintiff of income since September 2016.

395. As a result of having to take unpaid leave, Plaintiff became ineligible for tuition and costs reimbursement for the BSU summer, fall, and spring semesters she completed since May 2016 because she has not fulfilled the 12 month full time employee status requirement reimbursement.

396. Defendant SLHS's repeated failures to take appropriate action to train and supervise its employees has resulted in bullying and harassment of Plaintiff, and continued violations of the Americans with Disabilities Act and/or Title VII of the Civil Rights Act of 1964, which are the direct and proximate cause of Plaintiff's economic losses and emotional distress.

397. Prior to the retaliation against Plaintiff, Plaintiff successfully held her Radiology Department position and completed all functions essential to that position.

398. Plaintiff valued her position and her employment with Defendant SLHS.

399. Indeed, Plaintiff was an exemplary employee and consistently followed Defendant SLHS policies which was ultimately to her detriment.

400. Plaintiff temporarily left that position in September 2016 due solely to the retaliation and harassment by Plaintiff's co-workers and intentional exacerbation of Plaintiff's known disability by Defendant Hanson.

401. Rather than remedy the underlying toxic culture within the Radiology Department and reinstate Plaintiff to her position with her previous disability accommodation intact, Defendant SLHS has acted to deprive Plaintiff of any opportunity to return to her position and previous salary level.

402. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff has suffered noneconomic damages consisting of the exacerbation of her pre-existing PTSD disorder, embarrassment, humiliation, loss of self-esteem, loss of professional advancement resulting from her inability to complete the educational training programs described above, and other psychological and emotional distress.

403. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff has suffered economic damages resulting from her past and future unemployment, her inability to complete the educational training programs described above, medical care required to treat the exacerbation of her pre-existing PTSD disorder, and other associated economic damages.

404. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has incurred special damages including past and future wage loss, loss of tuition reimbursement, and past and future medical damages, in amounts to be proven at trial.

405. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has sustained other general, non-economic damages in an amount to be proven at trial.

406. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has sustained mental suffering and financial stress.

407. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has been required to seek and retain counsel to assist her in this action, through Seiniger Law.

408. Defendant SLHS is legally responsible for the acts and omissions of its employees, representatives, and/or its agents under the doctrine of *respondeat superior*.

### Compliance with Notice Pleading Requirements

409. Although not required by I.R.C.P. 8(a) to prove anything but a "short and plain statement of the claim showing that the pleader is entitled to relief" in a Complaint, Plaintiff gives notice to all Defendants that Plaintiff alleges causes of action sounding in negligence, vicarious liability, discriminatory retaliation, and violations of the Americans with Disabilities Act, and allege that all elements exist for each such cause of action.

410. In addition to the foregoing causes of action, specified for the convenience of the Court and defense counsel, Plaintiff hereby intends by this pleading to give notice that she may have additional claims against the Defendants arising from currently unknown facts of which the Defendants are aware relevant to acts and/or omissions of its employees, agents, and/or representatives

411. The facts as set forth are not intended to limit any theory of recovery, since the limited facts pleaded herein are based upon information presently known to the Plaintiff and are intended to comply with Idaho Rule of Civil Procedure 8(a)(2)'s requirement that this pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

412. Plaintiff intends to pursue all causes of action, including conspiracy to commit a tort, as may be applicable to the facts developed in discovery or otherwise in this case.

413. Plaintiff alleges that evidence exists of all elements of each cause of action pleaded herein.

414. The conduct of Defendants was intentional, willful, wanton, reckless, and/or grossly negligent.

415. To the extent that any cause of action applicable to the facts of this case or remedy sought by the Plaintiff requires the pleading of any other aggravated state of mind or conduct, Defendants are on notice that Plaintiff hereby includes each such allegations.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT SLHS
### Violation of the Americans with Disabilities Act (42 U.S.C. §12101, et seq.)

416. Plaintiff realleges all of the foregoing allegations as though fully set forth *in haec verba*.

417. Plaintiff was an "employee" of Defendant SLHS as defined by 42 U.S.C. § 12111(4).

418. Defendant SLHS was Plaintiff's "employer" as defined by 42 U.S.C. § 12111(5).

419. Plaintiff's long-standing disabling psychological condition constitutes a "disability" as defined by The Americans with Disabilities Act (42 U.S.C. §12001, et seq.) in that it is "a physical or mental impairment that substantially limits one or more of the major life activities..." 42 U.S.C. § 12102(2)(a).

420. Upon information and belief, Defendant SLHS employs over 13,000 individuals.

421. Plaintiff is a qualified radiographer, and successfully completed her job duties as such within the Defendant SLHS System until September 2016 when Defendant SLHS ceased providing an agreed upon reasonable accommodation agreed to between the parties that allowed her to perform the essential functions of her job.

422. At all relevant times herein, Plaintiff was afflicted with Post Traumatic Stress Disorder, or another long-standing disabling psychological condition constituting a "disability" as defined by The Americans with Disabilities Act (42 U.S.C. §12001, et seq.).

423. Plaintiff was regarded by Defendant as having such a disability.

424. At all relevant times herein, Plaintiff was a "qualified individual with a disability" as defined by The Americans with Disabilities Act (42 U.S.C. §12101, et seq.) who was able to perform the essential functions of the job.

425. Plaintiff's long-standing disabling psychological condition was exacerbated by the acts and omissions of Defendant SLHS, as a result of which it interfered with the major life activities by causing panic attacks and debilitating anxiety.

426. On a regular basis when not reasonably accommodated and under her doctor's care Plaintiff experienced panic attacks, debilitating anxiety, insomnia, depression, and headaches.

427. When suffering from the aggravation of Plaintiff's long-standing disabling psychological condition, Plaintiff would suffer frequent debilitating panic attacks.

428. Because of these problems experienced when Plaintiff is suffering from the aggravation of Plaintiff's long-standing disabling psychological condition, Plaintiff cannot control the onset of a severe panic attack or debilitating anxiety, including headache, rash, tearful episodes, unexplained feelings of terror, severe abdominal pain, and loss of bladder and bowel control.

429. When suffering from the aggravation of Plaintiff's long-standing disabling psychological condition, Plaintiff often lacks energy, is unable to complete many of her major life activities such as obtaining sufficient restorative sleep, and is fearful of leaving her home due to sudden and frequent panic attacks and accompanying physical symptoms and embarrassment.

430. Plaintiff's long-standing disabling psychological condition has been successfully treated by the administration of psychotropic medications and other modalities and a reasonable

accommodation of her job functions that allow her to perform the essential functions of a radiographer.

431. When suffering from the aggravation of Plaintiff's long-standing disabling psychological condition, Plaintiff is unable to work at her position without a reasonable accommodation.

432. The reasonable accommodation required by the Plaintiff did not impose an undue hardship on Defendant SLHS.

433. Plaintiff was constructively terminated in August 2016 by Defendant SLHS because of Plaintiff's disability, or alternatively, as a result of being regarded as having a psychological impairment.

434. Plaintiff's disability could have been accommodated by continuing to allow her to work a schedule that included day shifts only.

435. Although Defendant SLHS returned Plaintiff to her position on or about August 31, 2016, Plaintiff was retaliated against due to Plaintiff's need for a reasonable accommodation and/or other aspects of Plaintiff's disability.

436. Plaintiff was again constructively terminated by Defendant SLHS by refusing to continue her reasonable accommodation for the period between September 7, 2016 and March 28, 2017.

437. On or about March 29, 2017, Defendant SLHS informed Plaintiff that Plaintiff could participate in an ADA interactive process to return Plaintiff to work.

438. Plaintiff believed that this process allowed for her to be placed in a clinical position similar or identical to the position she was forced out of in September 2016, and with her reasonable disability accommodation reinstated.

439. However, it was soon made clear to Plaintiff that Defendant SLHS's approach to the "ADA interactive process" was to consider positions within Defendant SLHS that would not require consideration for Plaintiff's disability accommodation.

440. Indeed, Defendant Schafer repeatedly stated to Plaintiff that any position that had a requirement of on-call shifts would not be considered, despite Defendant SLHS's earlier approval of such an accommodation in May 2016.

441. This effectively precluded Plaintiff's return to a radiographer position since virtually all clinical radiographer positions have an on-call requirement, although such on-call shifts are infrequent and not required of every employee in practice.

442. Defendant Schafer stated to Defendant SLHS recruiters that Plaintiff's temporary physical restrictions were permanent, when she had knowledge that the restrictions were temporary.

443. On or about May 30, 2017, Defendant Schafer represented to Plaintiff that Plaintiff's pregnancy restrictions also precluded Plaintiff from being offered some positions.

444. This resulted in a significant narrowing of options for Plaintiff's employment to desk jobs only, that were unsuited for a trained radiographer.

445. Between May 30, 2017 and July 18, 2017, the choices presented to Plaintiff by Defendant Schafer were to (1) accept a lower paying intake coordinator position not within the scope of Plaintiff's training, education, or experience as a radiographer, to last for a minimum of twelve months; (2) forego her need for a reasonable disability accommodation as a condition of returning to a clinical radiographer position; or (3) face termination of Plaintiff's employment with Defendant SLHS altogether.

446. Curiously, on July 18, 2017, after repeated representations that Plaintiff would not even be considered for clinical positions due to her disability "restrictions" to day shifts only.

Defendant Schafer notified Plaintiff of one part-time clinical position that likely included night shifts, which excluding the several other radiographer positions open for hire.

447. After Plaintiff subsequently questioned Defendant Schafer on the sudden change, and asked for more suitable clinical positions to be offered, Defendant Schafer began offering additional and increasingly better suited radiographer positions to Plaintiff.

448. At no time has Defendant SLHS demonstrated that Plaintiff's reasonable disability accommodation has imposed or will impose an undue hardship on the operation of its business.

449. Based upon the events prior to her forced leave in September 2016, the events between September 2016 and March 2017, and Defendant Schafer's subsequent burdens placed upon Plaintiff's continued employment with Defendant SLHS and the Defendant's unwillingness to continue Plaintiff's previously agreed upon "reasonable accommodation" (as defined by 42 USC § 12111(9)) to permit Plaintiff to continue to perform the essential functions of her job, Defendant SLHS has violated Plaintiff's rights under the Americans with Disabilities Act.

450. Plaintiff has complied with all of the pre-litigation administrative requirements applicable to claims arising under the Americans with Disabilities Act.

451. Plaintiff sustained damages as a direct and proximate result of that discrimination as described above.

### SECOND CAUSE OF ACTION AGAINST DEFENDANTS SLHS; KRISTIE HANSON; JUDY GLASS; DESIREE SCHAFER; MAUREEN ASKEW; PAMELA LANE; LINDSEY TAFFIN; NICOLE DEAHL; CHRIS NEWTON; AND HANNAH NOGLE

#### Intentional Interference with Prospective Economic Advantage

452. Plaintiff realleges each of the foregoing allegations as though set forth *in haec verba*.

453. Plaintiff was an at-will employee of Defendant SLHS

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

454. Plaintiff had a reasonable expectation of continued employment with Defendant SLHS.

455. Plaintiff had a reasonable economic expectation of continued employment within the scope of her training, education, and experience.

456. Plaintiff had a reasonable economic expectancy of continued employment within the scope of her training and education.

457. Plaintiff had a reasonable expectation of being able to complete the Magnetic Resonance Imaging (MRI) and/or the Nuclear Medicine programs at BSU described above if she was able to obtain tuition reimbursement under the programs offered by Defendant SLHS and the VA.

458. Plaintiff had a reasonable economic expectancy of advances within her employment and additional income when she had completed these additional training programs.

459. Upon information and belief, Defendants SLHS, Hanson, Glass, Schafer, Askew, Lane, Taffin, Deahl, Newton, and Nogle had knowledge of Plaintiff's expectancies.

460. Defendants SLHS, Hanson, Glass, Schafer, Askew, Lane, Taffin, Deahl, Newton, and Nogle intentionally interfered with Plaintiff's expectancies by engaging in failing to prevent harassment and retaliation of Plaintiff; by inducing Plaintiff to take unpaid, and ultimately unprotected, leave of absence; by impeding Plaintiff's return to her original position; and placing a wrongful condition upon Plaintiff's future employment within the scope of her training and education within the St. Luke's system.

461. Defendants had an improper objective or purpose to harm the Plaintiff.

462. As a direct and proximate result of Defendants' use of wrongful means to injure the Plaintiff's prospective economic advantage, Plaintiff suffered damages as aforesaid.

463. Plaintiff sustained wrongful injuries beyond the fact of the interference itself.

464. Plaintiff was injured as aforesaid, and by losing her prospective economic advantage.

### THIRD CAUSE OF ACTION AGAINST DEFENDANTS SLHS; KRISTIE HANSON; JUDY GLASS; DESIREE SCHAFER; MAUREEN ASKEW; PAMELA LANE; LINDSEY TAFFIN; NICOLE DEAHL; CHRIS NEWTON; AND HANNAH NOGLE

#### Negligent Infliction of Emotional Distress

465. Plaintiff realleges each of the foregoing allegations as though set forth *in haec verba.*

466. Defendants owed a duty of care to Plaintiff.

467. Defendants' acts and omissions breached that duty as aforesaid.

468. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered special and general damages as aforesaid.

469. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered physical manifestations of emotional distress as aforesaid.

470. As a direct and proximate result of Defendant SLHS's negligent infliction of emotional distress, Plaintiff suffered damages as aforesaid.

### FOURTH CAUSE OF ACTION AGAINST DEFENDANT SLHS

#### Retaliatory Discrimination

471. Plaintiff realleges each of the foregoing allegations as though set forth *in haec verba.*

472. Plaintiff is protected by Title VII of the Civil Rights Act of 1964 from retaliation for reporting sexual harassment.

473. Plaintiff reasonably believed that the conduct of the two long-term employees toward the BSU intern in August 2016 constituted unlawful sexual harassment.

474. Plaintiff reasonably believed that the conduct of the two long-term employees toward the BSU intern in August 2016 constituted a violation of Defendant St. Luke's own sexual harassment policy.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

475. Plaintiff engaged in a protected activity when she reported what she believed to be sex-based harassment to Ms. Hanson.

476. Plaintiff engaged in a protected activity when she reported Ms. Hanson's subsequent arbitrary and unlawful revocation of Plaintiff's reasonable disability accommodation to Ms. Hanson herself, followed by Ms. Schafer.

477. Plaintiff suffered adverse employment action as aforesaid, including retaliation by her supervisor and co-workers.

478. The adverse employment action directly and proximately caused Plaintiff to suffer special and general damages as aforesaid.

479. There was a causal link between Plaintiff's engagement in protected activities and the subsequent adverse employment actions, as aforesaid.

## FIFTH CAUSE OF ACTION AGAINST DEFENDANT SLHS

### Negligent Supervision and Training

480. Plaintiff realleges each of the foregoing allegations as though set forth *in haec verba*.

481. In the event and to the extent that Defendant Hanson, Glass, Schafer, Askew, Lane, Taffin, Deahl, Newton, and/or Nogle contend that each did not knowingly deny Plaintiff rights guaranteed to her under the Americans with Disabilities Act and/or Title VII, these Defendants were not properly trained or supervised by Defendant SLHS.

482. The failure of Defendant SLHS to properly train its employees with respect to the requirements of the Americans with Disabilities Act and/or Title VII was negligent.

483. As a direct and proximate result of Defendant SLHS negligent failure to properly train its employees with respect to the requirements of the Americans with Disabilities Act and/or Title VII, Plaintiff suffered damages as aforesaid

---

## SIXTH CAUSE OF ACTION AGAINST DEFENDANT SLHS

**Intentional Interference with Prospective Civil Action by Spoliation of Evidence**

484. Plaintiff realleges each of the foregoing allegations as though set forth *in haec verba.*

485. Defendant SLHS had a duty to preserve evidence in this matter.

486. Upon information and belief, Defendant SLHS deleted emails Plaintiff had preserved regarding the events underlying this matter.

487. Upon information and belief, Defendant SLHS removed a journal from Plaintiff's locker that contained a narrative of the events underlying this matter, and created and kept by the Plaintiff at the suggestion of Defendant Schafer and/or other Defendant SLHS representatives in May 2016.

488. Upon information and belief, each of these acts occurred after Plaintiff began her leave of absence in September 2016.

489. Upon information and belief, these acts occurred after Plaintiff filed a Charge of Discrimination against Defendant SLHS with the Idaho Human Rights Commission.

490. These acts were intentional.

491. The evidence removed, deleted and or destroyed was unfavorable to Defendant SLHS and/or each of the other Defendants named herein.

492. These acts unreasonably interfered with Plaintiff's prospective claims against Defendants.

493. As a direct and proximate result of these acts, Plaintiff has been damaged by not having all evidence otherwise available to support her other causes of action in this case.

494. Whether this lack of evidence is fatal to any or all of Plaintiff's claims is a matter for determination by this Court.

**WHEREFORE, Plaintiff prays judgment against the Defendants as follows:**

1. Economic damages in such amount as may be proven at trial.

2. Non-economic damages in such amount as may be proven at trial.

3. All relief recoverable under the Americans with Disabilities Act 42 U.S.C. 2000(e) *et. seq.*, including reasonable costs and attorney fees.

4. All relief recoverable under Title VII of the Civil Rights Act of 1964, including reasonable costs and attorney fees.

5. An award of reasonable attorney fees and costs pursuant to 42 U.S.C. 1988.

6. For leave to amend this Complaint to add additional Federal causes of action if necessary based on the outcome of discovery.

7. For Plaintiff's reasonable costs and attorney fees incurred herein.

8. For such other and further relief as to the Court deems appropriate.

DATED: July 21, 2017.

SEINIGER LAW

By s/s Wm. Breck Seiniger, Jr. (ISB# 2387)
*Attorney for Plaintiff*

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues.

DATED: July 21, 2017.

SEINIGER LAW

By s/s Wm. Breck Seiniger, Jr. (ISB# 2387)
*Attorney for Plaintiff*

Electronically Filed
9/6/2017 1:14 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lusina Heiskari, Deputy Clerk

W$^m$ Breck Seiniger, Jr. (ISB#2387)
Eileen R. Johnson (ISB#9935)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com
Eileen@seinigerlaw.com

Barton, Peter G

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| KATRINA M. SHRADER | CASE NO. CV01-17-13427 |
| *Plaintiff,* | |
| **vs.** | **SUMMONS** |
| **ST. LUKE'S HEALTH SYSTEMS; KRISTIE HANSON; JUDY GLASS; DESIREE SCHAFER; MAUREEN ASKEW; PAMELA LANE; LINDSEY TAFFIN; NICOLE DEAHL; CHRIS NEWTON; HANNAH NOGLE;** *and* **JOHN and JANE DOES I THROUGH XX,** *whose true names are unknown.* | |
| *Defendants.* | |

**NOTICE:   YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF.   THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS.**

READ THE INFORMATION BELOW.

**TO: ST. LUKE'S HEALTH SYSTEM**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above designated court located at 200 W. Front Street, Boise, Idaho 83702, (208) 287-7080 within 20 days after service of this Summons on you.  If you fail to so respond the court may enter judgment against you as demanded by the Plaintiff in the Complaint.

A copy of the Complaint is served with this Summons.  If you wish to seek the advice of or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1. The title and number of this case.

2. If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

3. Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4. Proof of mailing or delivery of a copy of your response to Plaintiff's attorney, as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named court.

DATED this _____ day of __9/6/2017 1:14 PM_____, 2017.

CLERK OF THE DISTRICT COURT
By   CHRISTOPHER D. RICH

*Lusina Heiskari*
Deputy Clerk

Electronically Filed
9/6/2017 1:14 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lusina Heiskari, Deputy Clerk

W<sup>m</sup> Breck Seiniger, Jr. (ISB#2387)
Eileen R. Johnson (ISB#9935)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com
Eileen@seinigerlaw.com

Barton, Peter G

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

|  |  |
|---|---|
| **KATRINA M. SHRADER** | **CASE NO. CV01-17-13427** |
| *Plaintiff,* | |
| **vs.** | **SUMMONS** |
| **ST. LUKE'S HEALTH SYSTEMS; KRISTIE HANSON; JUDY GLASS; DESIREE SCHAFER; MAUREEN ASKEW; PAMELA LANE; LINDSEY TAFFIN; NICOLE DEAHL; CHRIS NEWTON; HANNAH NOGLE;** *and* **JOHN and JANE DOES I THROUGH XX,** *whose true names are unknown.* | |
| *Defendants.* | |

**NOTICE:  YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF.  THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS.**

READ THE INFORMATION BELOW.

**TO: KRISTIE HANSON**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above designated court located at 200 W. Front Street, Boise, Idaho 83702, (208) 287-7080 within 20 days after service of this Summons on you. If you fail to so respond the court may enter judgment against you as demanded by the Plaintiff in the Complaint.

A copy of the Complaint is served with this Summons. If you wish to seek the advice of or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1. The title and number of this case.

2. If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

3. Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4. Proof of mailing or delivery of a copy of your response to Plaintiff's attorney, as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named court.

DATED this _____ day of _____9/6/2017 1:14 PM_____, 2017.

CLERK OF THE DISTRICT COURT
By    CHRISTOPHER D. RICH

_____
Deputy Clerk   *Lusina Heiskari*

---

**SUMMONS**

**-2-**

Electronically Filed
9/6/2017 1:14 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lusina Heiskari, Deputy Clerk

Wᵐ Breck Seiniger, Jr. (ISB#2387)
Eileen R. Johnson (ISB#9935)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com
Eileen@seinigerlaw.com

Barton, Peter G

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| KATRINA M. SHRADER<br><br>*Plaintiff,*<br><br>vs.<br><br>**ST. LUKE'S HEALTH SYSTEMS;<br>KRISTIE HANSON; JUDY GLASS;<br>DESIREE SCHAFER; MAUREEN<br>ASKEW; PAMELA LANE; LINDSEY<br>TAFFIN; NICOLE DEAHL; CHRIS<br>NEWTON; HANNAH NOGLE;** *and*<br>**JOHN and JANE DOES I THROUGH<br>XX,** *whose true names are unknown.*<br><br>*Defendants.* | **CASE NO. CV01-17-13427**<br><br><br>**SUMMONS** |

**NOTICE: YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF. THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS.**

READ THE INFORMATION BELOW.

**TO: JUDY GLASS**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above designated court located at 200 W. Front Street, Boise, Idaho 83702, (208) 287-7080 within 20 days after service of this Summons on you. If you fail to so respond the court may enter judgment against you as demanded by the Plaintiff in the Complaint.

A copy of the Complaint is served with this Summons. If you wish to seek the advice of or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1.  The title and number of this case.

2.  If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

3.  Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4.  Proof of mailing or delivery of a copy of your response to Plaintiff's attorney, as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named court.

DATED this _____ day of _____ 9/6/2017 1:14 PM _____, 2017.

CLERK OF THE DISTRICT COURT
By CHRISTOPHER D. RICH

Deputy Clerk _Lusina Heiskari_

SUMMONS
-2-

Electronically Filed
9/6/2017 1:14 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lusina Heiskari, Deputy Clerk

W$^{\underline{m}}$ Breck Seiniger, Jr. (ISB#2387)
Eileen R. Johnson (ISB#9935)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com
Eileen@seinigerlaw.com

Barton, Peter G

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| **KATRINA M. SHRADER** | **CASE NO. CV01-17-13427** |
| *Plaintiff,* | |
| **vs.** | **SUMMONS** |
| **ST. LUKE'S HEALTH SYSTEMS; KRISTIE HANSON; JUDY GLASS; DESIREE SCHAFER; MAUREEN ASKEW; PAMELA LANE; LINDSEY TAFFIN; NICOLE DEAHL; CHRIS NEWTON; HANNAH NOGLE;** *and* **JOHN and JANE DOES I THROUGH XX,** *whose true names are unknown.* | |
| *Defendants.* | |

**NOTICE:   YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF.   THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS.**

READ THE INFORMATION BELOW.

**TO: DESIREE SCHAFER**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above designated court located at 200 W. Front Street, Boise, Idaho 83702, (208) 287-7080 within 20 days after service of this Summons on you. If you fail to so respond the court may enter judgment against you as demanded by the Plaintiff in the Complaint.

A copy of the Complaint is served with this Summons. If you wish to seek the advice of or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1. The title and number of this case.

2. If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

3. Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4. Proof of mailing or delivery of a copy of your response to Plaintiff's attorney, as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named court.

9/6/2017 1:14 PM

DATED this _____ day of _____, 2017.

CLERK OF THE DISTRICT COURT
By  CHRISTOPHER D. RICH

Deputy Clerk _Lusina Heiskari_

SUMMONS
-2-

Electronically Filed
9/6/2017 1:14 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lusina Heiskari, Deputy Clerk

W<sup>m</sup> Breck Seiniger, Jr. (ISB#2387)
Eileen R. Johnson (ISB#9935)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com
Eileen@seinigerlaw.com

Barton, Peter G

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| **KATRINA M. SHRADER** | **CASE NO. CV01-17-13427** |
| *Plaintiff,* | |
| **vs.** | **SUMMONS** |
| **ST. LUKE'S HEALTH SYSTEMS; KRISTIE HANSON; JUDY GLASS; DESIREE SCHAFER; MAUREEN ASKEW; PAMELA LANE; LINDSEY TAFFIN; NICOLE DEAHL; CHRIS NEWTON; HANNAH NOGLE;** *and* **JOHN and JANE DOES I THROUGH XX,** *whose true names are unknown.* | |
| *Defendants.* | |

**NOTICE:  YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF.  THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS.**

READ THE INFORMATION BELOW.

**TO: MAUREEN ASKEW**

---

**SUMMONS**
**-1-**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above designated court located at 200 W. Front Street, Boise, Idaho 83702, (208) 287-7080 within 20 days after service of this Summons on you.  If you fail to so respond the court may enter judgment against you as demanded by the Plaintiff in the Complaint.

A copy of the Complaint is served with this Summons.  If you wish to seek the advice of or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1.  The title and number of this case.

2.  If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

3.  Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4.  Proof of mailing or delivery of a copy of your response to Plaintiff's attorney, as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named court.

DATED this _____ day of _____9/6/2017 1:14 PM_____, 2017.

CLERK OF THE DISTRICT COURT
By  CHRISTOPHER D. RICH

Deputy Clerk _Lusina Heiskari_

SUMMONS
-2-

Electronically Filed
9/8/2017 9:17 AM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Jamie Martin, Deputy Clerk

W$^{\underline{m}}$ Breck Seiniger, Jr. (ISB#2387)
Eileen R. Johnson (ISB#9935)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com
Eileen@seinigerlaw.com

Barton, Peter G

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| KATRINA M. SHRADER | CASE NO. CV01-17-13427 |
| *Plaintiff,* | |
| vs. | SUMMONS |
| ST. LUKE'S HEALTH SYSTEMS; KRISTIE HANSON; JUDY GLASS; DESIREE SCHAFER; MAUREEN ASKEW; PAMELA LANE; LINDSEY TAFFIN; NICOLE DEAHL; CHRIS NEWTON; HANNAH NOGLE; *and* JOHN and JANE DOES I THROUGH XX,* *whose true names are unknown.* | |
| *Defendants.* | |

**NOTICE:   YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF.   THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS.**

READ THE INFORMATION BELOW.

**TO: PAMELA LANE**

---

**SUMMONS**
**-1-**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above designated court located at 200 W. Front Street, Boise, Idaho 83702, (208) 287-7080 within 20 days after service of this Summons on you. If you fail to so respond the court may enter judgment against you as demanded by the Plaintiff in the Complaint.

A copy of the Complaint is served with this Summons. If you wish to seek the advice of or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1.  The title and number of this case.

2.  If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

3.  Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4.  Proof of mailing or delivery of a copy of your response to Plaintiff's attorney, as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named court.

DATED this        day of ____9/8/2017 9:17 AM____, 2017.

CHRISTOPHER D. RICH

CLERK OF THE DISTRICT COURT

By

Deputy Clerk

---

**SUMMONS**

-2-

Electronically Filed
9/6/2017 1:14 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lusina Heiskari, Deputy Clerk

W<sup>m</sup> Breck Seiniger, Jr. (ISB#2387)
Eileen R. Johnson (ISB#9935)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com
Eileen@seinigerlaw.com

Barton, Peter G

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

|  |  |
|---|---|
| KATRINA M. SHRADER<br><br>*Plaintiff,*<br><br>vs.<br><br>ST. LUKE'S HEALTH SYSTEMS;<br>KRISTIE HANSON; JUDY GLASS;<br>DESIREE SCHAFER; MAUREEN<br>ASKEW; PAMELA LANE; LINDSEY<br>TAFFIN; NICOLE DEAHL; CHRIS<br>NEWTON; HANNAH NOGLE; *and*<br>JOHN and JANE DOES I THROUGH<br>XX,* whose true names are unknown.*<br><br>*Defendants.* | CASE NO. CV01-17-13427<br><br>SUMMONS |

**NOTICE:   YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF.   THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS.**

READ THE INFORMATION BELOW.

**TO: LINDSEY TAFFIN**

**SUMMONS**
**-1-**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above designated court located at 200 W. Front Street, Boise, Idaho 83702, (208) 287-7080 within 20 days after service of this Summons on you. If you fail to so respond the court may enter judgment against you as demanded by the Plaintiff in the Complaint.

A copy of the Complaint is served with this Summons. If you wish to seek the advice of or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1. The title and number of this case.

2. If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

3. Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4. Proof of mailing or delivery of a copy of your response to Plaintiff's attorney, as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named court.

9/6/2017 1:14 PM

DATED this _____ day of _____, 2017.

CLERK OF THE DISTRICT COURT
By    CHRISTOPHER D. RICH

Deputy Clerk _Lusina Heiskari_

SUMMONS
-2-

Electronically Filed
9/6/2017 1:14 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lusina Heiskari, Deputy Clerk

W<sup>m</sup> Breck Seiniger, Jr. (ISB#2387)
Eileen R. Johnson (ISB#9935)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com
Eileen@seinigerlaw.com

*Attorneys for Plaintiff*

Barton, Peter G

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| KATRINA M. SHRADER<br><br>*Plaintiff,*<br><br>vs.<br><br>ST. LUKE'S HEALTH SYSTEMS; KRISTIE HANSON; JUDY GLASS; DESIREE SCHAFER; MAUREEN ASKEW; PAMELA LANE; LINDSEY TAFFIN; NICOLE DEAHL; CHRIS NEWTON; HANNAH NOGLE; *and* JOHN and JANE DOES I THROUGH XX, *whose true names are unknown.*<br><br>*Defendants.* | CASE NO. CV01-17-13427<br><br><br>SUMMONS |

**NOTICE:   YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF.   THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS.**

READ THE INFORMATION BELOW.

**TO: NICOLE DEAHL**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above designated court located at 200 W. Front Street, Boise, Idaho 83702, (208) 287-7080 within 20 days after service of this Summons on you.  If you fail to so respond the court may enter judgment against you as demanded by the Plaintiff in the Complaint.

A copy of the Complaint is served with this Summons.  If you wish to seek the advice of or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1. The title and number of this case.

2. If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

3. Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4. Proof of mailing or delivery of a copy of your response to Plaintiff's attorney, as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named court.

9/6/2017 1:14 PM

DATED this _____ day of _____, 2017.

CLERK OF THE DISTRICT COURT
By   CHRISTOPHER D. RICH

_____
Deputy Clerk

**SUMMONS**
-2-

Electronically Filed
9/6/2017 1:14 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lusina Heiskari, Deputy Clerk

W$^{\underline{m}}$ Breck Seiniger, Jr. (ISB#2387)
Eileen R. Johnson (ISB#9935)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com
Eileen@seinigerlaw.com

Barton, Peter G

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| **KATRINA M. SHRADER** | **CASE NO. CV01-17-13427** |
| *Plaintiff,* | |
| **vs.** | **SUMMONS** |
| **ST. LUKE'S HEALTH SYSTEMS; KRISTIE HANSON; JUDY GLASS; DESIREE SCHAFER; MAUREEN ASKEW; PAMELA LANE; LINDSEY TAFFIN; NICOLE DEAHL; CHRIS NEWTON; HANNAH NOGLE;** *and* **JOHN and JANE DOES I THROUGH XX,** *whose true names are unknown.* | |
| *Defendants.* | |

**NOTICE:  YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF.  THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS.**

READ THE INFORMATION BELOW.

**TO: CHRIS NEWTON**

---

**SUMMONS**

**-1-**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above designated court located at 200 W. Front Street, Boise, Idaho 83702, (208) 287-7080 within 20 days after service of this Summons on you.  If you fail to so respond the court may enter judgment against you as demanded by the Plaintiff in the Complaint.

A copy of the Complaint is served with this Summons.  If you wish to seek the advice of or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1.  The title and number of this case.

2.  If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

3.  Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4.  Proof of mailing or delivery of a copy of your response to Plaintiff's attorney, as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named court.

DATED this _____ day of ___9/6/2017 1:14 PM_____, 2017.

CLERK OF THE DISTRICT COURT
By   CHRISTOPHER D. RICH

_____
Deputy Clerk   *Lusina Heiskari*

**SUMMONS**
**-2-**

Electronically Filed
9/6/2017 1:14 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lusina Heiskari, Deputy Clerk

W<sup>m</sup> Breck Seiniger, Jr. (ISB#2387)
Eileen R. Johnson (ISB#9935)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com
Eileen@seinigerlaw.com

Barton, Peter G

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| **KATRINA M. SHRADER** | **CASE NO. CV01-17-13427** |
| *Plaintiff,* | |
| **vs.** | **SUMMONS** |
| **ST. LUKE'S HEALTH SYSTEMS; KRISTIE HANSON; JUDY GLASS; DESIREE SCHAFER; MAUREEN ASKEW; PAMELA LANE; LINDSEY TAFFIN; NICOLE DEAHL; CHRIS NEWTON; HANNAH NOGLE;** *and* **JOHN and JANE DOES I THROUGH XX,** *whose true names are unknown.* | |
| *Defendants.* | |

**NOTICE:   YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF.   THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS.**

READ THE INFORMATION BELOW.

**TO: HANNAH NOGLE**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above designated court located at 200 W. Front Street, Boise, Idaho 83702, (208) 287-7080 within 20 days after service of this Summons on you.  If you fail to so respond the court may enter judgment against you as demanded by the Plaintiff in the Complaint.

A copy of the Complaint is served with this Summons.  If you wish to seek the advice of or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1. The title and number of this case.

2. If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

3. Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4. Proof of mailing or delivery of a copy of your response to Plaintiff's attorney, as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named court.

DATED this _____ day of ___9/6/2017 1:14 PM_____, 2017.

CLERK OF THE DISTRICT COURT
By CHRISTOPHER D. RICH

_____
Deputy Clerk

SUMMONS
-2-

Electronically Filed
10/18/2017 9:08 AM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lusina Heiskari, Deputy Clerk

W<sup>m</sup> Breck Seiniger, Jr. (ISB#2387)
Eileen R. Johnson (ISB#9935)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com
Eileen@SeinigerLaw.com

*Attorneys for Plaintiff*

Sim J. Avila (ISB#9736)
Associate General Counsel
ST. LUKES HEALTH SYSTEMS, LTD.
avilasi@slhs.org

*Attorney for Defendants*

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE
## STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| KATRINA M. SHRADER<br><br>*Plaintiff,*<br><br>vs.<br><br>ST. LUKE'S HEALTH SYSTEMS;<br>KRISTIE HANSON; JUDY GLASS;<br>DESIREE SCHAFER; MAUREEN<br>ASKEW; PAMELA LANE; LINDSEY<br>TAFFIN; NICOLE DEAHL; CHRIS<br>NEWTON; HANNAH NOGLE; *and*<br>JOHN and JANE DOES I THROUGH<br>XX, *whose true names are unknown.*<br><br>*Defendants.* | CASE NO. CV01-17-13427<br><br><br>ACKNOWLEDGEMENT AND<br>ACCEPTANCE OF SERVICE |

## ACKNOWLEDGMENT AND ACCEPTANCE OF SERVICE
### -1-

COMES NOW Sim J. Avila, attorney for Defendants, and accepts service of process on behalf of the above-named Defendants and acknowledges the adequacy of that service.

DATED:    October 4, 2017

/s/ Sim Avila
*Attorney for Defendants*

**ACKNOWLEDGMENT AND ACCEPTANCE OF SERVICE**
**-2-**

## CERTIFICATE OF SERVICE

I CERTIFY than on this **4** day of ___October___ 2017, I caused a true
and correct copy of the foregoing document to be served on the following parties as indicated:

Wm. Breck Seiniger, Jr.
SEINIGER LAW
942 W. Myrtle Street
Boise, Idaho 83702
Fax: 208-345-1000
Email: WBS@seinigerlaw.com

DATED: **10 - 4 - 17**

Sim J. Avila
*Counsel for Defendants*

**ACKNOWLEDGEMENT AND ACCEPTANCE OF SERVICE**
3

Electronically Filed
10/18/2017 9:08 AM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lusina Heiskari, Deputy Clerk

W<u>m</u> Breck Seiniger, Jr. (ISB#2387)
Eileen R. Johnson (ISB#9935)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com
Eileen@SeinigerLaw.com

*Attorneys for Plaintiff*

Sim J. Avila (ISB#9736)
Associate General Counsel
ST. LUKES HEALTH SYSTEMS, LTD.
avilasi@slhs.org

*Attorney for Defendants*

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| KATRINA M. SHRADER<br><br>*Plaintiff,*<br><br>vs.<br><br>ST. LUKE'S HEALTH SYSTEMS;<br>KRISTIE HANSON; JUDY GLASS;<br>DESIREE SCHAFER; MAUREEN<br>ASKEW; PAMELA LANE; LINDSEY<br>TAFFIN; NICOLE DEAHL; CHRIS<br>NEWTON; HANNAH NOGLE; *and*<br>JOHN and JANE DOES I THROUGH<br>XX, *whose true names are unknown.*<br><br>*Defendants.* | CASE NO. CV01-17-13427<br><br>STIPULATION FOR ENTRY OF STAY |

STIPULATION FOR ENTRY OF STAY
-1-

COME NOW the parties, jointly and through undersigned counsel, and request that the Court enter a stay of proceedings in this matter.  This motion is based upon the fact that Plaintiff filed this case in order to comply with the filing deadlines under the Americans with Disabilities Act.  Defendants have acknowledged and accepted service.

The parties are working together in an attempt to reach a mutually agreeable accommodation of Plaintiff's disability under the Americans with Disabilities Act.  The parties represent that engaging in discovery and/or motion practice in this case at this time may be contrary to the interests of justice and judicial economy, in that resolution of some or all of the issues raised by the Complaint in this case would narrow the issues at trial.  The parties request that the court enter a stay with respect to discovery and further action in this case for a period of 180 days.  The parties agree to advise the Court of the status of their negotiations within that time frame. A copy of the proposed order staying the case is attached hereto.

Dated September 11, 2017.

/s/ Wm. Breck Seiniger, Jr.
*Attorney for Plaintiff*

Dated September 11, 2017.

Oct 4, 2017

/s/ Sim Avila
*Attorney for Defendants*

**STIPULATION FOR ENTRY OF STAY**
**-2-**

W^m Breck Seiniger, Jr. (ISB#2387)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com

*Attorney for Plaintiff*

Sim J. Avila (ISB#9736)
Associate General Counsel
ST. LUKES HEALTH SYSTEMS, LTD.
avilasi@slhs.org

*Attorney for Defendants*

## IN THE DISTRICT COURT FOR THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| KATRINA M. SHRADER<br><br>*Plaintiff,*<br><br>vs.<br><br>**ST. LUKE'S HEALTH SYSTEMS;<br>KRISTIE HANSON; JUDY GLASS;<br>DESIREE SCHAFER; MAUREEN<br>ASKEW; PAMELA LANE; LINDSEY<br>TAFFIN; NICOLE DEAHL; CHRIS<br>NEWTON; HANNAH NOGLE;** *and*<br>**JOHN and JANE DOES I THROUGH<br>XX,** *whose true names are unknown.*<br><br>*Defendants.* | **CASE NO. CV01-17-13427**<br><br><br>**ORDER STAYING CASE** |

This matter, having come before the Court on the stipulation for entry of stay filed by the parties jointly, the parties represent that the Complaint in this case was filed in order to comply

**ORDER STAYING CASE**
-1-

with the deadline for filing under the Americans with Disabilities Act, but that the parties are in fact negotiating in an effort to reach a reasonable accommodation under the ADA.  The parties represent that engaging in discovery and/or motion practice in this case at this time may be contrary to the interests of justice and judicial economy in that resolution of some or all of the issues raised by the Complaint in this case would narrow the issues to be tried.   The parties have requested that the Court enter a stay with respect to discovery and further action in this case for a period of 180 days.  The parties have agreed to advise the Court of the status of their negotiations within that time frame. The Court having considered the stipulation of the parties and good cause appearing therefore, IT IS HEREBY ORDERED THAT:

1. This action be and hereby is stayed for 180 days from the date of this order;
2. The parties are to report within 180 days on the status of their negotiations regarding reasonable accommodation under the Americans with Disabilities Act;
3. Should any party decline to negotiate further, the parties are directed to advise the Court within a period of 7 days; and
4. Either party may request that the Court vacate this stay at any time.


DATED: _____, 2017.


_____
Honorable Peter G. Barton
District Judge


**ORDER STAYING CASE**
**-2-**

## CLERK'S CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of _____, 2017, I served a true and correct copy of the foregoing Order by delivering the same to each of the following parties, by the method indicated below:

Wm. Breck Seiniger, Jr.
SEINIGER LAW
942 W. Myrtle Street
Boise, Idaho 83702
*Attorney for Plaintiff*

[   ] Odyssey E-File
[   ] Email: WBS@seinigerlaw.com
[   ] Facsimile: (208)345-1000
[   ] U.S. Mail

Sim J. Avila (ISB#9736)
Associate General Counsel
ST. LUKES HEALTH SYSTEMS, LTD.
*Attorney for Defendants*

[   ] Odyssey E-File
[   ] Email: avilasi@slhs.org
[   ] Facsimile
[   ] U.S. Mail

_____

Clerk of the Fourth District Court

**ORDER STAYING CASE**
**-3-**

Signed: 10/24/2017 03:46 PM

| FILED By: _____ Deputy Clerk |
| Fourth Judicial District, Ada County |
| CHRISTOPHER D. RICH, Clerk |

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF

THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

KATRINA M. SHRADER,

      Plaintiff,

vs.

ST. LUKES HEALTH SYSTEMS; et al,

      Defendant.

Case No. CV 0117-13427

NOTICE OF
**TELEPHONIC** STATUS CONFERENCE

    A **telephonic** status conference is hereby set for **November 2, 2017, at 3:00 p.m.**
before the Honorable Peter G. Barton, Ada County Courthouse, Boise, Idaho.

    Counsel must appear **telephonically** at this time. The Court will initiate the call.

    Dated_____10/24/17_____

                  Christopher D Rich
                  Clerk of the District Court

                  By: _____
                  Inga Johnson
                  Deputy Court Clerk

### CERTIFICATE OF MAILING

    I hereby certify that on ___10/24/17_____ I mailed (served) a true and correct
copy of the within instrument to:

| Breck Seiniger, Jr | Sim Avila |
| Attorney at Law | Attorney at Law |
| wbs@seinigerlaw.com | avilasi@slhs.org |

                  Christopher D Rich
                  Clerk of the District Court

                  By: _____
                  Inga Johnson
                  Deputy Court Clerk

